UNITED STATES of America, Appellee,

v.

**Elizabeth LOGAN, also known as Honey, Appellant.**

UNITED STATES of America, Appellee,

v.

**Louise Cain HOUSE, Appellant.**

Nos. 94–2372, 94–2374.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1995.

Decided April 28, 1995.

Robert J. Thomas, Jr., St. Louis, MO, argued, for appellant Logan.

N. Scott Rosenblum, St. Louis, MO, argued, for appellant House. (Case No. 93–2374 was not argued.)

Patricia McGarry, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before MCMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Louise Cain House appeals her sentence and Elizabeth Logan appeals her conviction and sentence for trafficking in heroin. We affirm House's sentence and Logan's conviction, but vacate the sentence imposed upon Logan and remand for resentencing.

## I. *Louise Cain House*

Louise Cain House pleaded guilty to engaging in a continuing criminal enterprise to distribute heroin in violation of 21 U.S.C. § 841. In exchange for her cooperation, the government dismissed seven other counts against her. House faced a statutory mandatory minimum of twenty years on this count.

21 U.S.C. § 848. At sentencing the district court calculated House's range of imprisonment at 240 to 262 months, based on criminal history category III, offense level 35, and the applicable statutory mandatory minimum. The court sentenced House to 180 months (fifteen years), however, pursuant to the government's "substantial assistance" motion. 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1.

■ House's sole argument on appeal is that the district court erred as a matter of law in not granting a greater downward departure from the otherwise applicable sentencing range. House asks us to reconsider this circuit's caselaw holding that the extent of a district court's downward departure is not reviewable. *See United States v. Womack,* 985 F.2d 395, 401 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993). We are bound by that precedent, however, *id.* at 399, and therefore affirm House's sentence.

## II. *Elizabeth Logan*

A jury convicted Elizabeth "Honey" Logan of conspiracy to distribute and to possess with the intent to distribute heroin. 21 U.S.C. §§ 841(a)(1), 846. The district court calculated her sentence based on an offense level of 36 and criminal history category I, resulting in an imprisonment range of 188 to 235 months. The court sentenced her to 235 months (nineteen years, seven months).

Logan raises three challenges to her conviction and sentence: (1) firearms taken from her residence were improperly admitted into evidence, (2) the quantity of heroin attributed to her for sentencing purposes was not supported by the evidence, and (3) there was insufficient evidence to support a four-level enhancement for being a leader or organizer of the conspiracy.

### A. *Admissibility of the Firearms*

The district court admitted into evidence a rifle and a semiautomatic handgun. At trial the government presented evidence that the guns were found, loaded, in Logan's bedroom by police officers who were executing a search warrant. Several thousand dollars also were found in the bedroom, and Louise House testified that she paid Logan $39,500 for heroin in that bedroom. A law enforcement officer testifying as an expert witness stated that these types of weapons are often used by drug traffickers.

■ A district court possesses broad discretion in making evidentiary rulings, and those rulings will not be disturbed on appeal absent an abuse of discretion. *United States v. Searing,* 984 F.2d 960, 965 (8th Cir.1993). The court's discretion is particularly broad in the context of a conspiracy trial. *Id.* Logan concedes the relevance of the firearms but argues that the district court nonetheless should have ruled them inadmissible on the ground that their probative value was substantially outweighed by the risk of unfair prejudice. *See* Fed.R.Evid. 403. Logan claims that there was already ample evidence to show that she was engaged in heroin trafficking, such as the testimony of co-conspirators, the currency found at her house, and taped telephone conversations, so that the admission of the firearms to prove the conspiracy was "prejudicial." We disagree. The presence of the loaded firearms in the house where the drug transactions occurred is evidence that the weapons were used to facilitate the drug trafficking. *See United States v. Watson,* 953 F.2d 406, 409 (8th Cir.1992). The availability of the guns helps establish the conspiracy of which Logan was charged. The district court did not abuse its discretion in finding no undue prejudice in admitting the firearms into evidence.

### B. *Quantity of Heroin*

■ Logan argues that the district court erred in calculating the amount of heroin attributable to her for purposes of determining her sentence under the sentencing guidelines. The court's drug quantity determination is a factual finding that we review under the clearly erroneous standard. *United States v. Bieri,* 21 F.3d 811, 817 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). When the amount of drugs seized does not reflect the scale of the offense, the district court may approximate

the quantity based on similar transactions engaged in by the defendant. U.S.S.G. § 2D1.1, comment. (n.12). We will reverse a drug quantity finding only if we are firmly convinced that a mistake has been made. *United States v. Maxwell*, 25 F.3d 1389, 1397 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994).

■ The government bears the burden of establishing the quantity of drugs attributable to a defendant for sentencing purposes. *Id.* If a defendant objects to factual allegations contained in the Presentence Investigation Report (PSR), a district court may not adopt the PSR's challenged facts until the defendant's objections have been heard and the government proves by a preponderance of the evidence that the facts stated in the PSR are accurate. *See United States v. Greene*, 41 F.3d 383, 386 (8th Cir.1994); Fed. R.Crim.P. 32(c)(1). Logan contends that the government failed to carry its burden of proof because the trial testimony relied upon by the PSR and the district court did not support the conclusion that Logan sold over one kilogram of heroin during the conspiracy. Logan further complains that she was unable to fully present her objections to the PSR at the sentencing hearing because the court refused to allow her to question Louise House, even though House was present in the courthouse at the time of the hearing. We agree that the government failed to establish that over one kilogram of heroin was attributable to Logan during this conspiracy.

The district court set Logan's base offense level at 32, representing at least one kilogram but less than three kilograms of heroin. *See* U.S.S.G. § 2D1.1(c)(4). The court adopted the calculation set forth in the PSR which purported to reflect the trial testimony of witnesses, primarily Louise House. By combining some specific figures and extrapolating from House's testimony, the court found that House bought 50 grams of heroin from Logan twice a month for nine months (January through September 1992), for a subtotal of 900 grams, plus 148.7 grams that were seized from House on October 6, 1992.

This amount—1048.7 grams—put Logan over the one kilogram threshold of level 32.

As an initial matter, we find that the district court clearly erred in adopting the PSR's conclusion that Logan provided House with heroin beginning in January 1992. *See* PSR, ¶ 16. House herself testified that she began buying heroin from Logan in "early spring" of 1992. Tr. 542. Prior to that time House bought heroin from Logan's husband. *Id.* As the government failed to clarify what date or even what month House was referring to, we conclude that spring arrives no earlier than March in either St. Louis or Chicago. *See The American Heritage Dictionary* 1250 (New College Ed.1976). We therefore hold that Logan began to sell heroin to House no earlier than March 1992.

We find no clear error in the district court's finding that House's heroin purchases from Logan averaged 50 grams per purchase and that there were two purchases a month. The district court may approximate drug quantity based on similar transactions by a defendant, so long as the estimates have sufficient accuracy. U.S.S.G. § 2D1.1, comment. (n.12); *United States v. Brown*, 19 F.3d 1246, 1248 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 100, 130 L.Ed.2d 49 (1994); *United States v. Olderbak*, 961 F.2d 756, 764 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992). Both House and her daughter, Sue Cramer, testified to purchases of 50 grams, and House recalled one buy of 75 grams. Tr. 557, 586–87, 658. House's final purchase from Logan was for 148.7 grams, which was seized from House upon her arrest on October 6, 1992.

As to the frequency of her purchases, House testified that she made two trips per month to Chicago to buy heroin from Logan. Tr. 542. Cramer testified that she accompanied House on five trips to Chicago to buy heroin. Tr. 650–51. House and Cramer also stated that Logan sometimes delivered heroin to St. Louis. Tr. 557, 572, 658. In light of the testimony about House's trips to Chicago as well as Logan's deliveries to St. Louis, the district court did not clearly err in

finding that House made two purchases a month from Logan during the conspiracy.

We therefore determine that the evidence supports the conclusion that Logan sold 50 grams of heroin twice a month from March through September 1992, plus 148.7 grams that was seized from House on October 6, 1992. This total of 848.7 grams gives Logan a base offense level of 30 (at least 700 grams but less than one kilogram) under the sentencing guidelines, rather than level 32 which the district court applied after it determined that at least one kilogram of heroin was attributable to Logan.[1]

### C. *Role in the Offense*

■ Finally, Logan challenges the four-level enhancement she received in her sentencing calculation for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In deciding whether a defendant exercised a leadership position, the district court examines factors such as the person's decisionmaking authority, type of participation in the offense, nature and scope of the crime, and degree of control or authority over others. *Id.* comment. (n.3). More than one person in a conspiracy can qualify as a leader or organizer. *Id.* The district court's determination of a defendant's role in the offense is a factual finding that we review for clear error. *Maxwell*, 25 F.3d at 1399.

■ There is no dispute that over five persons were involved in the heroin distribution ring. In addition, the district court itself, which heard all the evidence at trial, stated that the record indicated Logan was the "most culpable" in the conspiracy. Sent. Tr. 750. Co-conspirator House, at her plea hearing, was herself described by the prosecution as an "organizer or supervisor" and as a person who "was running this heroin distribution organization" in St. Louis. House Plea Hrg. 12, 15. Logan was a major supplier of heroin to House, who in turn distributed the drug to many people in the St. Louis area. Logan arranged "turn around" trips for House to pick up heroin in Chicago and return to St. Louis, and she allowed House to defer payment until the heroin had been resold. Logan also recruited her teenage granddaughter to carry heroin from Chicago to St. Louis on one occasion, and furnished her grandson to be House's driver when House came to Chicago to buy heroin from Logan.

This court has broadly interpreted the terms "organizer" and "leader" and has held that "a defendant can be a leader or organizer within the meaning of section 3B1.1(a) even if [s]he did not directly control others in the conspiracy." *Maxwell*, 25 F.3d at 1400. On the record before us we find no clear error in the district court's determination that Logan was a "leader" or "organizer" of the conspiracy, resulting in the addition of four points to Logan's base offense level.

### III. *Conclusion*

We affirm Louise Cain House's conviction for engaging in a continuing criminal enterprise to distribute heroin. We also affirm Elizabeth Logan's conspiracy conviction but vacate her sentence. We conclude that her total offense level, including the leadership enhancement, is 34, which carries an imprisonment range of 151 to 188 months. We remand her case to the district court for resentencing within this range.

---

1. In view of our conclusion that the evidence did not support the district court's drug quantity finding, we need not discuss the issue of whether the court acted properly in refusing to allow House to be questioned by the defense at the sentencing hearing.