**UNITED STATES of America, Appellee,**

v.

**Donald Leroy SCOTT, Appellant.**

**No. 95–1237.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1995.

Decided Aug. 24, 1995.

James Whalen, Asst. Fed. Public Defender, argued, Des Moines, IA (Nicholas Drees, on brief), for appellant.

Robert C. Dopf, Asst. U.S. Atty., argued, Des Moines, IA, for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

McMILLIAN, Circuit Judge.

Donald LeRoy Scott appeals from a final judgment entered in the District Court[1] for the Southern District of Iowa upon a jury verdict finding him guilty of one count of conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846. For reversal de-

fendant argues that the district court erred in denying his motion for judgment of acquittal on sufficiency of the evidence grounds, and in admitting over objection certain videotape evidence. For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND

In February 1994, police officers in Centerville, Iowa, investigated a marijuana-growing operation. Acting on a tip from an informant, an Appanoose County deputy sheriff went to the home of Paul Stajcar. Obtaining Mr. Stajcar's consent to search a Quonset hut[2] on the premises, the deputy sheriff found a hidden room containing a large indoor marijuana-growing operation, complete with remote-controlled lights, heating equipment, central air conditioning, water pumps and tanks, fertilizer, electric timers, and over 900 live marijuana plants. One of the officers videotaped this marijuana-growing operation.

The following week police executed search warrants at two Missouri Farm Association (MFA) buildings located south of Centerville (referred to as the green and white MFA buildings). The white MFA building appeared to have been recently evacuated, but there was still marijuana residue on the floor and some equipment left behind similar to that found at the Quonset hut. Inside the green MFA building, marijuana-growing equipment was discovered and seized. Police also determined that main electric wires to the building had been by-passed to permit the undetected consumption of electricity. Three days later, Gary Gatrel admitted to police that he was responsible for installing the electrical by-pass in the green MFA building and agreed to provide information to the police about the marijuana-growing operation. Acting on Gatrel's information, police executed a search warrant for the property of James Scott, the brother of defendant, and there police discovered a red barn under

---

1. The Honorable Ronald E. Longstaff, United States District Court Judge for the Southern District of Iowa.

2. According to Webster's Ninth New Collegiate Dictionary (1983), a Quonset hut is "a prefabricated shelter set on a foundation of bolted steel trusses and built of a semicircular arching roof of corrugated metal insulated with wood fiber."

renovation. Police observed that the barn, as partially renovated, closely resembled the grow room found in the Quonset hut on Paul Stajcar's property. Furthermore, as Gatrel had informed police, there was evidence of an electrical by-pass to the red barn.

The physical evidence gathered by the government and information obtained from Gatrel and others revealed the existence of a sophisticated marijuana-growing operation involving various individuals and locations. The green MFA building was the home of the "momma" marijuana plants, the plants from which cuttings were taken to start new plants. The government alleged that such cuttings were taken weekly and that the cuttings were then transported to one of four grow rooms situated throughout Appanoose County as space permitted. The plants were harvested according to a sixty-day growing cycle.

On June 22, 1994, a federal grand jury returned a seven-count indictment against defendant, James Scott, Marcella Scott, and John Stajcar. Defendant was charged in two counts of the indictment, for conspiracy to manufacture marijuana under 21 U.S.C. § 846 and for forfeiture of funds or property derived from proceeds of his illegal activity under 21 U.S.C. § 853. James Scott, Marcella Scott, and John Stajcar entered into plea agreements with the government. Defendant, alone, was tried on the second count in the indictment, for conspiracy to manufacture marijuana. At trial, the government introduced evidence showing that defendant's brother, James Scott, was the leader of the marijuana-growing conspiracy. Other co-conspirators included: James's wife, Marcella Scott; defendant; Paul Stajcar; Paul Stajcar's brother, John Stajcar; the owner of the white MFA building, James Bowen; and Gatrel. The government alleged that the conspiracy began some time in 1991, and defendant joined in the conspiracy in November of 1993, after returning to Centerville from Pennsylvania. Bowen testified that defendant had helped unload particle board that was to be used in remodeling James Scott's red barn, and that James Scott had told Bowen that the two brothers (James Scott and defendant) planned to install marijuana-growing tables in the remodeled section of the barn. Bowen also testified that James Scott had told him that defendant was "coming into the operation." Bowen further testified that he had observed defendant cutting marijuana plants in both the white and the green MFA buildings. Gatrel testified that defendant helped wire the electrical by-pass at James Scott's red barn. Gatrel also testified that he had seen defendant cutting or trimming marijuana plants in both the green and the white MFA buildings. Paul Stajcar testified that he had seen defendant standing in the middle of the green MFA building with Bowen. The government introduced evidence that between November 1993 and February 1994, defendant and his wife made cash deposits into two bank accounts in amounts varying between one and five thousand dollars, on eight separate occasions, for a total contribution of $26,000. The government also introduced into evidence, over defendant's objection, the videotape of the marijuana-growing equipment found in the Quonset hut on Paul Stajcar's property. The district court overruled defendant's objection.

Defendant testified and denied any involvement in the conspiracy. Defendant claimed that he was helping his brother renovate the red barn so it could be used as a place to refurbish antique furniture. Other co-conspirators disclaimed defendant's involvement in the conspiracy and portrayed Bowen, who had testified for the government, as untrustworthy. Testimony from several witnesses also suggested that defendant and his brother, James Scott, looked very much alike. Defendant also claimed that the cash he and his wife had deposited into two bank accounts had come from approximately $30,000 in retirement savings which they had brought with them from Pennsylvania to Centerville.

On November 10, 1994, the jury found defendant guilty of conspiracy to manufacture marijuana. Defendant moved for judgment of acquittal. The district court denied his motion. At sentencing, the district court found that defendant had aided in the processing of over 100 marijuana plants. Defendant was sentenced to a mandatory minimum of 60 months in prison under 21 U.S.C.

§ 841(b)(1)(B)(vii), four years supervised release, and a special assessment of $50.00. This appeal followed.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the district court erred in denying his motion for judgment of acquittal. He argues that the evidence was insufficient to support the jury verdict finding him guilty of conspiracy to manufacture marijuana. For the reasons discussed below, we disagree.

"The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Burks,* 934 F.2d 148, 151 (8th Cir.1991) (*Burks*). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.), *cert. denied,* 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *Id.* "A conviction may be based on circumstantial as well as direct evidence.... The evidence need not exclude every reasonable hypothesis except guilt." *Id.* (citation omitted). "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *Burks,* 934 F.2d at 151.

The jury was instructed that the government had the burden to prove three essential elements beyond a reasonable doubt to convict defendant of conspiracy to manufacture marijuana: (1) two or more persons reached an agreement or came to an understanding to commit against the United States the criminal offense of knowingly and intentionally manufacturing marijuana; (2) defendant individually, voluntarily, and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; (3) at the time defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding. Brief for Appellant at 9 (quoting Jury Instruction No. 12).

█ Considering all of the evidence in the record as a whole, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant had voluntarily and intentionally joined in an agreement or understanding to manufacture marijuana. "Once the existence of a conspiracy has been established, even slight evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme to render [the defendant] culpable." *United States v. Losing,* 560 F.2d 906, 912 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *see also United States v. Askew,* 958 F.2d 806, 810 (8th Cir.1992); *United States v. Garcia,* 785 F.2d 214, 225 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). In the present case, testimony from co-conspirators connected defendant to the conspiracy to manufacture marijuana. A reasonable juror could have concluded from the evidence that defendant took cuttings, assisted his brother, James Scott, the alleged leader of the conspiracy, in the renovation of a barn to be used as a grow room, and helped to wire an electrical by-pass so that marijuana could be cultivated discreetly. James Scott allegedly stated to a co-conspirator that defendant was "coming into the operation." Moreover, defendant made numerous, sizable cash deposits into two bank accounts within a relatively short time frame, supporting the inference that such money was drug-related. Viewing the record as a whole in the light most favorable to the government, we hold that there was sufficient evidence to sustain the jury's verdict.

### II. ADMISSIBILITY OF VIDEOTAPE EVIDENCE

Defendant next argues that the district court abused its discretion in admitting into evidence the videotape of the marijuana-growing equipment in the Quonset hut on

Paul Stajcar's property. First, defendant argues, based upon Fed.R.Evid. 401, that the videotape was irrelevant because no evidence directly linked him to the marijuana-growing operation in the Quonset hut. Second, defendant argues, based upon Fed.R.Evid. 403, that, even if the videotape had some relevance, its prejudicial impact substantially outweighed its probative value. Defendant asserts that the government introduced the videotape in order to suggest that defendant was in some way involved in the large operation in the Quonset hut and that the combined evidence against defendant did not support that conclusion. Defendant also argues that, even if the government's purpose in introducing the videotape was to demonstrate the nature of the equipment used in the growing operation, the introduction of other, less prejudicial evidence obviated the need for the videotape evidence at trial.

The government argues that the district court did not abuse its discretion in admitting the videotape of the Quonset hut grow room because that evidence helped to establish the existence, nature, size, and scope of the marijuana-growing conspiracy. Evidence of a conspiracy was necessary to prove the government's case against defendant.

■ Determination of the admissibility of evidence lies within the sound discretion of the trial judge. *United States v. Logan,* 54 F.3d 452, 454 (8th Cir.1995). We review such decisions for abuse of discretion. *Id.* In the context of a conspiracy trial, district courts have particularly broad discretion in determining the nature of evidence to be admitted. *Id.*

■ Under Fed.R.Evid. 401, evidence is relevant so long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The videotape was relevant because it tended to show the nature, size and scope of the growing operation. Because of the integrated nature of the growing process and the alleged distribution of baby plants in this conspiracy, each part of the operation was relevant to establish the existence of the conspiracy in which defendant was allegedly a participant.

Moreover, testimony from co-conspirators linked defendant to the construction of a new grow room in the red barn, and to the taking of cuttings from the "momma" plants. A reasonable jury could have inferred from the testimony that such cuttings were sent to the other grow rooms, including the one in the Quonset hut. We therefore hold that the district court did not abuse its discretion in concluding that the videotape of the grow room in the Quonset hut on Paul Stajcar's property was relevant to demonstrate the nature and scope of the marijuana-growing conspiracy, for which defendant was alleged to be legally responsible as a co-conspirator.

■ Under Fed.R.Evid. 403, a court should not admit evidence where the prejudicial effect of the evidence substantially outweighs its probative value. In this case, we hold that the district court did not abuse its discretion under Fed.R.Evid. 403 in admitting the videotape of the Quonset hut grow room. "Once a person joins a conspiracy, ... he assumes full liability for the conspiracy even though he joined in the later stages." *United States v. Hoelscher,* 914 F.2d 1527, 1534 (8th Cir.1990). "[E]ven someone who plays a minor role in a conspiracy may be found guilty." *United States v. Tran,* 16 F.3d 897, 904 (8th Cir.1994). Moreover, a conspirator need not be aware of the activities of all other co-conspirators in order to be convicted of the conspiracy. *United States v. Watts,* 950 F.2d 508, 512 (8th Cir.1991), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1992), *and cert. denied,* 503 U.S. 943, 112 S.Ct. 1493, 117 L.Ed.2d 634 (1992), *and cert. denied,* 503 U.S. 945, 112 S.Ct. 1498, 117 L.Ed.2d 637 (1992). Therefore, even if defendant joined the conspiracy relatively late, played only a minor role in the conspiracy, and was unaware of some aspects of the conspiracy, he was legally responsible as a co-conspirator for all acts carried out in furtherance of the conspiracy, including the activities demonstrated by the videotape taken at the Quonset hut. In the present case, the district court determined that the videotape evidence was not unfairly prejudicial. Considering the several links of evidence establishing defendant as a co-conspirator, and the apparently unchallenged as-

**382**

sertion that the Quonset hut was part and parcel of that same conspiracy, we cannot conclude that the district court abused its discretion in admitting the videotape evidence. *See United States v. Peyro*, 786 F.2d 826, 830 (8th Cir.1986) (declining to find abuse of discretion for admission of 10 ½ kilograms of cocaine even though the defendant was only indirectly linked to the cocaine through the conspiracy).

For the reasons discussed above, the judgment of the district court is affirmed.