# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 96-2897NE

United States of America,     *
                                *
      Plaintiff/Appellee,     *     Appeal from the United States
                                *     District Court for the
      v.                         *     District of Nebraska.
                                *
Anthony Emmanuel,         *
                                *
      Defendant/Appellant.   *

Submitted: February 11, 1997

Filed: May 5, 1997

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and BATTEY,[1] Chief District Judge.

BATTEY, Chief District Judge.

Appellant Anthony Emmanuel ("Emmanuel") was convicted for conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. At sentencing the district court[2] calculated Emmanuel's range of imprisonment at 57 to 71 months, based on criminal history category III and total offense level 23. The court sentenced Emmanuel to sixty months' imprisonment applying the minimum sentence requirement contained in 21 U.S.C. § 841(b)(1)(B)

---

[1]The Honorable Richard H. Battey, Chief United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

(viii). Emmanuel challenges his conviction based on the district court's admission of the following: (1) firearms seized from his residence and a co-conspirator's residence; and (2) testimony of Emmanuel's ex-girlfriend concerning uncharged methamphetamine distribution and physical abuse. He challenges his sentence based on the district court's determinations as to the following: (1) the finding as to the type of methamphetamine; (2) the enhancement of  the sentence under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of a crime; and (3) the classification of methamphetamine in the schedules. We affirm his conviction and sentence.

## I.   TRIAL ISSUES

### A.   *Firearms Evidence*

Emmanuel asserts that the district court erred in admitting evidence of firearms seized from his residence and the residence of co-conspirator Michael Crestoni ("Crestoni").  He contends that the firearms were not relevant on the question of his guilt or the existence of a conspiracy to distribute methamphetamine, and that their prejudicial effect outweighed their probative value under Federal Rule of Evidence 403.  We review the district court's evidentiary ruling on the admission of the firearms under the abuse of discretion standard.  See United States v. Jackson, 67 F.3d 1359, 1366 (8th Cir. 1995); Old Chief v. United States, _____ U.S. _____, 117 S. Ct. 644, 647 n.1, 136 L. Ed. 2d 574 (1997). The district court's discretion is particularly broad in the context of a conspiracy trial. United States v. Logan, 54 F.3d 452, 454 (8th Cir. 1995) (citing United States v. Searing, 984 F.2d 960, 965 (8th Cir. 1993)).

Six firearms, consisting of five shotguns and one .22 caliber rifle, were seized at Emmanuel's residence. They were uncased and found in Emmanuel's master bedroom. Most of the weapons were loaded. Controlled substances, as well as other drug paraphernalia, were also discovered throughout Emmanuel's residence including: (1) a baggie containing smaller ziploc baggies in the master bedroom on the dresser adjacent to the bed; (2) a Tanita electronic scale in the basement; (3) baggies containing methamphetamine residue in the basement; and (4) a scale and roach clip in a dish in the dining room.

Two firearms were seized at Crestoni's residence consisting of a loaded lever action 30-30 rifle found in an unfinished attic and a 10mm semi-automatic pistol with a round loaded in the chamber located on a shelf above the kitchen door. At trial Crestoni testified that both weapons were used for protection from drug thieves. Controlled substances, as well as other drug paraphernalia, were also discovered throughout Crestoni's residence including: (1) purported drug records on the dining room table which did not reference Emmanuel; (2) a Tanita electronic gram scale in a chest of drawers in the dining room; (3) an envelope containing two plastic baggies with methamphetamine on the dining room table; and (4) a camera bag containing three plastic baggies with methamphetamine in a kitchen cupboard.

The record establishes evidence affirmatively linking Crestoni's drug conspiracy to Emmanuel. Crestoni testified that he began receiving methamphetamine from one James Ryan ("Ryan") in the summer of 1993. In early 1994, Crestoni began receiving as much as sixteen ounces of methamphetamine weekly from Ryan. During the time frame of late spring to early summer of 1994, through the date of his arrest on August 5, 1994, the amount of methamphetamine increased to as much as three pounds per week. Crestoni paid Ryan

$8,000 cash for each pound.  Crestoni would re-weigh and re-package the methamphetamine into ounce quantities in plastic baggies similar to those seized at Emmanuel's residence. The drugs were then distributed at a price of $1,000 per ounce. Crestoni identified Emmanuel as one of his customers. He estimated that he sold methamphetamine to Emmanuel three to four times in amounts varying from two to six ounces at a time during the conspiracy. Emmanuel paid cash for the deliveries which took place at both Emmanuel's and Crestoni's residences.

It is the law of this circuit that  "[t]he presence of loaded firearms in the house where the drug transactions occurred is evidence that the weapons were used to facilitate the drug trafficking."  Logan, 54 F.3d at 454 (citing United States v. Watson, 953 F.2d 406, 409 (8th Cir. 1992)). The drugs and drug paraphernalia found throughout the house were in proximity to the weapons. The availability of the loaded firearms in Emmanuel's residence was relevant on the issue of the existence of the drug conspiracy.  Id.; Jackson, 67 F.3d at 1367. As was the case with the firearms seized at Emmanuel's residence, the loaded firearms seized at Crestoni's residence where drug transactions occurred and drug paraphernalia were seized are evidence that the weapons were used to facilitate the drug trafficking. See Logan, 54 F.3d at 454. Moreover, Crestoni highlighted the weapons' significance to the conspiracy when he testified that the two weapons seized in his house were used for protection against drug thieves.  The availability of the loaded firearms in Crestoni's residence is also relevant for purposes of establishing the conspiracy of which Emmanuel was charged. Id.; Jackson, 67 F.3d at 1367.

Emmanuel invites us to apply Bailey v. United States, ____ U.S. __ , 116 S. Ct. 501, 133 L. Ed. 2d 472 (1996), to require the government to prove that the weapons were used or intended to be

used in order for the weapons to be admissible in a drug conspiracy case. We decline the invitation. <u>Bailey</u> involved conviction under 18 U.S.C. § 924(a)(1) which criminalized "use" of a firearm during and in relation to a drug trafficking offense. In such case the statute requires evidence sufficient to show active employment of a firearm by a defendant. The firearms found in the houses of Emmanuel and Crestoni were relevant on the issue of the existence of the drug conspiracy. The government was not required to prove "use" under the <u>Bailey</u> standard as a predicate to admissibility. The court did not err in the admission of this evidence.

### B.    Rule 404(b) Evidence

Emmanuel asserts that the district court erred in admitting co-conspirator Connie Kissel's ("Kissel") testimony regarding Emmanuel's obtaining methamphetamine from Crestoni prior to the time frame of the alleged conspiracy and his assaultive behavior toward her. The claimed assault was not included in the government's Rule 404(b) notice or the pretrial discussions. It was raised in response to the prosecutor's question as to how or why Kissel remembered her relationship ended with Emmanuel on February 8, 1994. She responded that was when "he beat me up." Emmanuel did not preserve an objection, and there was no further mention of the subject. We find no plain error.

Prior to trial, the government filed an amended notice of intent to use Rule 404(b) evidence which included Kissel's testimony pertaining to Emmanuel's prior drug activity. Kissel had been involved in a relationship with Emmanuel from March of 1993 until February 8, 1994. Emmanuel objected to the government's notice that Kissel would provide testimony regarding Emmanuel's obtaining methamphetamine from Crestoni during the time frame of

their relationship. His objection was that the testimony concerned a period outside the alleged conspiracy time frame of June 1994 to August 5, 1994. The district court made a preliminary determination that Kissel's testimony would be excluded because it was outside the time period of the conspiracy. However, at trial the district court admitted the testimony conditionally under United States v. Bell, 573 F.2d 1040 (8th Cir. 1978). The evidence was admitted to show Emmanuel's knowledge concerning the objective of the conspiracy, his relationship to any co-conspirators including Crestoni, and the availability of methamphetamine.

Before admitting Kissel's testimony regarding Emmanuel's conduct during a period prior to the alleged conspiracy, the district court provided the jury with a Rule 404(b) cautionary instruction. The court instructed the jury that Kissel's testimony should only be considered to establish: (1) Emmanuel's knowledge of the alleged conspiracy; (2) his intent to distribute and possess with intent to distribute; (3) his plan to join the alleged conspiracy; (4) his opportunity to enter into the alleged conspiracy; or (5) the absence of mistake or accident by Emmanuel.

Kissel testified that she had known Crestoni for fifteen to twenty years and had purchased methamphetamine from him in the latter part of 1993 and during the summer months of 1994. She also stated that she had known Emmanuel for approximately fifteen years and that their romantic relationship began in March of 1993, and ended on February 8, 1994, as a result of Emmanuel's assault at which time she moved into Crestoni's residence. She testified that although she had never actually witnessed Emmanuel receive methamphetamine from Crestoni, Emmanuel had told her that he had received methamphetamine from him. During the time frame of late 1993, through the time of their breakup on February 8, 1994, she indicated that Emmanuel told her that he purchased one ounce of

methamphetamine every one to two weeks from Crestoni. Kissel also provided testimony as to Emmanuel's drug activity during the time frame of the conspiracy. She stated that irrespective of their breakup, she and Emmanuel had weekly contact during the time of the alleged conspiracy which ran from June of 1994 to August 5, 1994. Emmanuel disclosed to her that during this time period he was selling "three or four ounces a week" which she understood to mean methamphetamine.

Prior bad acts may be admitted under Rule 404(b) to demonstrate motive, opportunity, intent, preparation, common plan, knowledge, identity, or absence of mistake or accident. To be admissible, evidence must also meet the following conditions: (1) it must be relevant to a material issue; (2) the bad act must be reasonably similar in kind and close in time to the crime charged; (3) it must be sufficient to support a jury finding that the defendant committed the prior act; and (4) the probative value of the evidence must outweigh its prejudicial effect. United States v. Edwards, 91 F.3d 1101, 1103 (8th Cir. 1996) (citing United States v. Jones, 990 F.2d 1047, 1050 (8th Cir.), *cert. denied*, 510 U.S. 1048, 114 S. Ct. 699, 126 L. Ed. 2d 666 (1994)). See also United States v. Dobynes, 905 F.2d 1192, 1194-95 (8th Cir. 1990). The district court has broad discretion to admit evidence of other bad acts under Rule 404(b) unless the evidence tends to prove only the defendant's criminal disposition. United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995) (citing United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir. 1992)). We review the district court's evidentiary ruling on the admission of Rule 404(b) evidence under the abuse of discretion standard. Edwards, 91 F.3d at 1103 (citing United States v. Huff, 959 F.2d 731, 736 (8th Cir.), *cert. denied*, 506 U.S. 855, 113 S. Ct. 162, 121 L. Ed. 2d 110 (1992)).

7

Kissel's testimony regarding Emmanuel's distribution of methamphetamine from late 1993 to February 8, 1994, is admissible under Rule 404(b). The district court did not abuse its discretion in admitting Kissel's testimony regarding Emmanuel's uncharged methamphetamine distribution. Kissel's testimony concerning Emmanuel's prior drug activity was admissible since it was relevant; its probative value outweighed its prejudicial effect; the prior drug activity was reasonably similar in kind and close in time to the crime charged; and the record indicates the evidence was sufficient to support a jury finding that Emmanuel engaged in the prior drug activity. See, e.g., United States v. Moore, 98 F.3d 347, 350 (8th Cir. 1996); United States v. Shoffner, 71 F.3d 1429, 1432-33 (8th Cir. 1995).

## II.  SENTENCING ISSUES

Emmanuel contends that the district court erred in determining that the methamphetamine involved was a Schedule II controlled substance and that it was d-methamphetamine as opposed to l-methamphetamine.

The statutory mandatory minimum provides that in a case where a defendant is found guilty of a violation of the Controlled Substance Act involving "10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years . . . ."  21 U.S.C. § 841(b)(1)(B)(viii).

The court sentenced Emmanuel to sixty months' imprisonment, applying the mandatory minimum sentence required by 21 U.S.C.

§ 841(b)(1)(B)(viii). Emmanuel attempts to distinguish between d- and l-methamphetamine to avoid application of the statutory mandatory minimum which by its own terms makes no distinction. Accordingly, Emmanuel's argument lacks merit. The mandatory minimum sentence prescribed by statute trumps Emmanuel's claim of error as to the type of methamphetamine. <u>United States v. Massey</u>, 57 F.3d 637 (8th Cir. 1995).

Finally, Emmanuel urges that the district court erred by applying the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of a crime. The presentence report provided for a presumptive sentence of 57 to 71 months. The district court applied the mandatory minimum of 60 months. Again, the mandatory minimum trumps this objection.

## IV. CONCLUSION

For the reasons enumerated above, the judgment and sentence are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9