**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-4022SI
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Eric Gabriel Ortiz, | * |
| | * |
| Appellant. | * |

_____

No. 96-4023SI
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeals from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| Roeles Ortiz, | * | |
| | * | |
| Appellant. | * | |

_____

No. 96-4129SI
_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Sean Demarco Stone,                *
                                   *
          Appellant.               *


_____

No. 96-4168SI
_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Ramon Ortiz, Jr.,                  *
                                   *
          Appellant.               *
                             _____

                    Submitted:  May 22, 1997
                         Filed:  September 11, 1997
                             _____

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.
                             _____

FAGG, Circuit Judge.

This is a multi-count, multi-defendant drug case. The jury convicted Eric Gabriel Ortiz, Roeles Ortiz, Ramon Ortiz, Jr., and Sean Demarco Stone of conspiring to distribute marijuana, cocaine, and methamphetamine. See 21 U.S.C. §§ 841(a)(1), 846 (1994). The jury also convicted Ramon and Eric Ortiz of using or carrying a firearm in relation to a drug trafficking crime, see 18 U.S.C. § 924(c)(1) (1994); Ramon and Roeles Ortiz and Stone of possessing cocaine with intent to distribute, see 21 U.S.C. § 841(a)(1); and Ramon Ortiz of witness tampering, see 18 U.S.C. § 1512(b)(1) (1994). Raising numerous issues, all four defendants appeal their convictions, and Eric and Roeles Ortiz also appeal their sentences. We will fill in the facts as relevant, issue by issue. We affirm.

First, Eric Ortiz contends his trial began after the seventy-day Speedy Trial Act clock had run. See 18 U.S.C. § 3161(c)(1) (1994). Delays resulting from continuances are excluded from the seventy-day period if the district court finds "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The district court granted the Government a continuance when Eric Ortiz's case was consolidated for trial with those of his codefendants, but Eric Ortiz argues the resulting delay was not excludable because the district court failed to make an "ends of justice" finding. This is a moot point. Taking other excludable delays into account, but without excluding the continuance delay, the district court correctly determined Eric Ortiz's trial began on day sixty-seven after the Speedy Trial Act clock began to run.

Next, the Ortiz brothers and Stone contend the district court should have excluded photographs showing the defendants using gang hand signals as unfairly prejudicial under Federal Rule of Evidence 403. The challenged snapshots display solidarity and mutual support among the defendants and other coconspirators. Conceding the relevance of the photographs to the issue of conspiracy, the defendants coupled their motion to exclude with an offer to stipulate to their relationships with one another. As a rule, however, "a criminal defendant may not stipulate or admit his way

out of the full evidentiary force of the case as the [G]overnment chooses to present it." Old Chief v. United States, 117 S. Ct. 644, 653 (1997).  The district court prohibited the Government from referring to the gang signals, excluded two photographs, and admitted the rest.  In so doing, the district court acted well within its discretion.  See United States v. Emmanuel, 112 F.3d 977, 979 (8th Cir. 1997) (discretion particularly broad in context of conspiracy trial).

The Ortiz brothers and Stone next contend the district court incorrectly excluded a report prepared by an agent of the Drug Enforcement Administration (DEA).  The report relates statements made by an informant about the drug-dealing activities of one of the Government's witnesses.  According to the defendants, the report would have impeached the witness's testimony.  The report was hearsay, but the defendants argue it was admissible under Federal Rule of Evidence 803(8)(C).  In civil actions and proceedings, and against the Government in criminal cases, Rule 803(8)(C) creates a hearsay exception for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."  The Ortiz brothers and Stone also contend the informant's statements within the report were admissible under Rule 804(b)(3) as statements against interest.

The DEA report presents an instance of double hearsay:  the report itself, and the informant's statements contained in the report.  Thus, the report is inadmissible unless each level of hearsay falls within an exception to the hearsay rule.  See Fed. R. Evid. 805; Hoselton v. Metz Baking Co., 48 F.3d 1056, 1061 (8th Cir. 1995).  We need not address the admissibility of the informant's statements under Rule 804(b)(3) because the report itself is inadmissible under Rule 803(8)(C).  The report is essentially a transcript of what the informant told the DEA agent.  It does not present "factual findings," which is what Rule 803(8)(C) makes admissible.  See United States v. D'Anjou, 16 F.3d 604, 610 (4th Cir. 1994).

The next issue involves testimony concerning the seizure by police of $20,000 from Eric Ortiz. The Ortiz brothers and Stone moved in limine to have that testimony excluded. The district court denied the motion, but expressed willingness to consider giving a limiting instruction if the defendants proposed one. See Fed. R. Evid. 105. They failed to do so. On appeal, Eric Ortiz does not challenge the admission of the testimony against himself, but the other two Ortiz brothers and Stone contend the district court committed error when it admitted the testimony without an instruction limiting its scope to Eric Ortiz alone. None of the defendants asked for a limiting instruction, however, and the district court did not commit plain error in not giving one sua sponte. See United States v. Perkins, 94 F.3d 429, 435-36 (8th Cir. 1996). Before retiring, the jury was instructed that "[e]ach defendant is entitled to have his case decided solely on the evidence which applies to him." The jury acquitted Roeles Ortiz on two counts and a fifth defendant on another count, demonstrating the jury's ability to compartmentalize the evidence. See United States v. Watts, 950 F.2d 508, 513 (8th Cir. 1991). We are satisfied the absence of a limiting instruction did not affect the defendants' substantial rights. See Fed. R. Crim. P. 52(b).

Sean Stone was sentenced to concurrent terms for conspiring to distribute various illegal drugs and for possession of cocaine with intent to distribute. Stone contends both his convictions rest on insufficient evidence. In reviewing an insufficient evidence claim, we view the evidence in the light most favorable to the verdict, giving the verdict the benefit of all inferences that could have been reasonably drawn from the evidence. See United States v. McCracken, 110 F.3d 535, 540 (8th Cir. 1997). We will overturn the jury's verdict only if "'a reasonable fact-finder must have entertained a reasonable doubt about the [G]overnment's proof'" of an element of the offense. Id. (quoting United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996)).

To obtain Stone's conviction on the conspiracy count, the Government had to prove that "'there was an agreement to achieve some illegal purpose, that [Stone] knew of the agreement, and that [Stone] knowingly became a part of the conspiracy.'"

United States v. Cabrera, 116 F.3d 1243, 1244 (8th Cir. 1997) (quoting United States v. Ivey, 915 F.2d 380, 383-84 (8th Cir. 1990)).  Once a conspiracy has been established, even slight evidence linking Stone to the conspiracy is enough to sustain his conviction.  See id. at 1245.  Here, the record amply demonstrates the existence of a drug conspiracy, and the testimony of two unindicted coconspirators made plain Stone's knowing involvement in the conspiracy.  Sufficient evidence supports Stone's drug conspiracy conviction.

Turning to the possession count, the jury was instructed Stone could be found guilty if he aided and abetted the commission of possessing cocaine with intent to distribute.  See 18 U.S.C. § 2(a) (1994) (making one who aids or abets the commission of a federal offense "punishable as a principal").  Aiding and abetting may be established without evidence Stone possessed or sold cocaine.  See United States v. Smith, 32 F.3d 1291, 1294 (8th Cir. 1994).  The testimony of coconspirator David Keasling supplied the relevant evidence.  Keasling testified Roeles Ortiz told him to pick up a package of cocaine at the home of another coconspirator, Oscar Mejia.  Stone was present when Keasling arrived at Mejia's house.  Stone helped Mejia and Keasling lift a waterbed and retrieve the cocaine from its place of concealment.  Stone, Mejia, and Keasling then transported the cocaine to Keasling's house.  The package contained roughly eighteen ounces of cocaine, a quantity from which intent to distribute may be inferred.  See United States v. White, 81 F.3d 80, 82 (8th Cir. 1996).  This evidence was sufficient for the jury to conclude beyond a reasonable doubt that Stone "affirmatively participated [in] or encouraged the unlawful activity."  United States v. Johnson, 64 F.3d 1120, 1127 (8th Cir. 1995), cert. denied, 116 S. Ct. 971 (1996).

Having reviewed the issues the defendants raise about their convictions, we turn to their sentencing challenges. Eric Ortiz appeals his four-level sentence enhancement for organizing or leading a criminal activity involving five or more participants, see U.S. Sentencing Guidelines Manual § 3B1.1(a) (1995), contending the district court's findings in support of the enhancement were insufficiently specific.  We disagree.  At

Eric Ortiz's sentencing hearing, the Government summarized the relevant testimony of three coconspirator witnesses. Although Eric Ortiz challenged this testimony, the district court found it both credible and sufficient to establish that Eric Ortiz led a drug conspiracy involving six others besides himself. These findings were specific enough to support the four-level enhancement. See United States v. Grajales-Montoya, 117 F.3d 356, 365-66 (8th Cir. 1997).

Roeles Ortiz raises two sentencing issues. First, he contends the district court wrongly attributed to him $128,000 in drug proceeds seized from Eric Ortiz, which for sentencing purposes translated into 4.46 kilograms of cocaine. Because Roeles Ortiz was convicted as a coconspirator, he was "responsible for all reasonably foreseeable acts of others taken in furtherance of the conspiracy." United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996) (citing U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B)), cert. denied, 117 S. Ct. 1258 (1997). Roeles Ortiz maintains he could not have reasonably foreseen Eric Ortiz's $128,000 drug deal. On the contrary, Roeles Ortiz was a committed, continuing member of the conspiracy who stood to benefit if Eric Ortiz had escaped undetected with the cash. These facts satisfy the reasonable foreseeability test. See United States v. Flores, 73 F.3d 826, 833 (8th Cir.), cert. denied, 116 S. Ct. 2568 (1996). Thus, we conclude the district court's drug quantity findings were not clearly erroneous. See Tauil-Hernandez, 88 F.3d at 579.

Finally, Roeles Ortiz maintains his offense level should not have been enhanced two levels for possession of a dangerous weapon. See U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1995). The relevant testimony came from Daniel Stevens, a coconspirator who was present when police seized the $128,000 from Eric Ortiz. Stevens testified that over the course of several months, Ramon and Roeles Ortiz threatened to harm him unless he told the police the $128,000 was his. Ramon Ortiz made good on the threats by shooting Stevens. Stevens testified he was "ninety-nine percent sure" Roeles Ortiz was present when Stevens was shot, but Stevens admitted he could not "swear to it a hundred percent." The jury acquitted Roeles Ortiz of gun-

related charges arising from Stevens's shooting. In sentencing Roeles Ortiz, however, the district court could consider conduct underlying the gun-charge acquittals, provided that conduct has been proved by a preponderance of the evidence. See United States v. Watts, 117 S. Ct. 633, 637-38 (1997) (per curiam); United States v. Roach, 28 F.3d 729, 735-36 (8th Cir. 1994) (citing United States v. Johnson, 962 F.2d 1308, 1313 (8th Cir. 1992) (stating preponderance standard)). The district court assessed a two-level weapon enhancement based on its findings that Roeles Ortiz "participat[ed] . . . in a series of intimidating acts against Mr. Stevens to get him to cover up the [drug-dealing] activities of Eric [Ortiz]," and that sufficient evidence placed Roeles Ortiz at the scene of the shooting. These findings are not clearly erroneous, and they justify Roeles Ortiz's weapon possession enhancement. See Tauil-Hernandez, 88 F.3d at 579 (weapon enhancement proper when Government proves weapon was used to further conspiracy and its possession was reasonably foreseeable).

We affirm the convictions of the Ortiz brothers and Stone, and we also affirm the sentences of Eric and Roeles Ortiz.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.