# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2107

_____

United States of America,

        Appellee,

v.

Lawrence George Lashley, also known as Larry Lashley,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: January 9, 2001
Filed:   May 16, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and Jones,[1] District Judge.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

Larry Lashley appeals his conviction and sentence on drug charges following a jury trial. We affirm the judgment of the district court.[2]

I.

During the course of an investigation begun in 1997, drug enforcement officers discovered that Larry Lashley was operating a large-scale methamphetamine manufacturing organization. The investigation disclosed that twelve other people were involved with Lashley in the manufacture and/or distribution of methamphetamine throughout Franklin County, Missouri, and elsewhere from approximately March 1997 through May 1999. Several members of the conspiracy agreed to plead guilty and cooperate. They provided the authorities with the names and respective roles of their coconspirators. Lashley did not agree to plead guilty but rather proceeded to trial. Nine coconspirators testified against him at trial and each detailed the directions they had received from Lashley regarding various tasks in their scheme to manufacture and distribute methamphetamine.

Specifically, Paul Steele testified that Lashley used Steele's property and residence for cooking methamphetamine. Lashley provided him with methamphetamine as payment for his cooperation. Mark Hyndrich testified that Lashley also used Hyndrich's residence for cooking methamphetamine. Lashley instructed Hyndrich to act as a lookout during the manufacturing process. Similarly, Tracy McGrath allowed Lashley to use her family's summer home as a cook site, and Lashley supplied her with methamphetamine in return.

Further testimony revealed that at Lashley's instruction, Tammy Pennington had purchased pseudoephedrine pills and starter fluid, which are ingredients necessary to

_____

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

2

cook methamphetamine. Lashley and Donald Moore had directed Jerry Steele and Mark Hyndrich to steal anhydrous ammonia, another necessary ingredient. Lashley directed and financed the purchase of large amounts of pseudoephedrine in Oklahoma. Darryl Schneider, Melanie Deutschmann, Sheila Erxleben, Heather Franks, Gary Fritz, and Jerry Steele, each individually or in small groups, drove to Oklahoma on several different occasions at Lashley's direction to purchase pseudoephedrine for use in cooking methamphetamine. In exchange for their help, Lashley provided them with small amounts of methamphetamine.

Also, testimony revealed that Lashley provided several codefendants (namely Melanie Deutschmann, Sheila Erxleben, and Tammy Pennington) with larger amounts of methamphetamine for resale. Lashley would front the cost by providing a resalable amount of methamphetamine without expecting repayment until after the codefendants sold it. Lashley expected repayment after they had the money, but he allowed them to keep whatever profit they could make from the resale.

Lashley was arrested in a wooded area in rural Missouri where he had stored some items commonly associated with the manufacture of methamphetamine, including a propane tank believed to contain anhydrous ammonia. At that time, authorities found a small amount of methamphetamine in Lashley's pocket and a loaded shotgun in his vehicle which was parked at the scene.

A grand jury indicted Lashley in May 1999 with one count of conspiracy to manufacture methamphetamine, one count of conspiracy to distribute methamphetamine, and one count of manufacturing methamphetamine. Shortly before Lashley's trial was scheduled to begin, the government learned that Lashley's counsel had contacted two government witnesses and obtained statements from them that were allegedly exculpatory as to Lashley's involvement in the conspiracy. Lashley's counsel obtained these statements from the witnesses without the knowledge or consent of the witnesses' retained counsel. The government also learned that Lashley and his father

had worked together to corruptly procure the false statements. Lashley's father had persuaded the two witnesses to help his son in exchange for United States currency and methamphetamine. At the government's request, the district court held a pretrial hearing to inquire into Lashley's counsel's conduct and to determine how to handle this evidence, which was of doubtful admissibility given the ethical misconduct surrounding its procurement. The district court and the parties together resolved the problem by agreeing to proceed as if the incident had never happened. Lashley indicated that after weighing all of the factors, he preferred to ignore the incident, forego the statements as evidence, and proceed to trial with his current counsel. His father pleaded guilty to the obstruction charges, and the government agreed to dismiss the obstruction indictment against Lashley.

Trial on the drug charges began on December 7, 1999. On December 13, 1999, the jury began its deliberations. At approximately 5:00 p.m. that day, three jurors left the courthouse under the mistaken belief that they were free to go. The district court, however, had not yet formally dismissed the jurors or admonished them not to discuss the case with anyone. Upon learning of their departure, the court admonished and dismissed the remaining jurors. The court then contacted by telephone the three who had left early and gave them the same admonishment. The next day, the court inquired as to whether the three jurors had spoken to anyone concerning the case, and they indicated that they had not. They also indicated that they remembered the admonition and understood that it still applied to them. Deliberations continued, and the jury convicted Lashley on each count of the indictment.

At sentencing, the district court adopted the findings of fact as stated in the Presentence Investigation Report. When applying the United States Sentencing Guidelines, the district court assessed a two-level enhancement for the possession of a dangerous weapon, a four-level enhancement based upon Lashley's role in the offense as an organizer or leader, and a two-level enhancement for willfully obstructing

4

the administration of justice. The court sentenced Lashley to a term of 360 months of imprisonment. Lashley appeals.

## II.

Lashley raises three issues on appeal. First, he contends that the district court erred in prohibiting the introduction of exculpatory evidence and in failing to disqualify his own trial counsel for a conflict of interest. The evidence he refers to are the statements of the two government witnesses taken by Lashley's counsel outside the presence of the witnesses' attorneys and without the knowledge of the government. The witnesses provided statements that were exculpatory as to Lashley, but the credibility of the statements is seriously undermined by the circumstances. Lashley's father had given the witnesses a ride to the attorney's office and had provided them with methamphetamine and money in exchange for statements that would help his son. One of these statements was taped and became the basis for an obstruction of justice indictment against Lashley and his father because the witness informed the government that she had made false statements in the taped interview. Ultimately, Lashley's father pleaded guilty to the obstruction charge, and the government agreed to dismiss the obstruction indictment against Lashley.

The government initially wanted to use the taped statement and the surrounding circumstances as evidence of Lashley's efforts to obstruct justice and to show his consciousness of guilt. Aware that its potential use of the statements might cause Lashley's attorney to find it necessary to testify concerning the surrounding circumstances or the credibility of the two witnesses, the government requested that the district court inquire into the potential conflict on the part of Lashley's attorney. The district court conducted a pretrial hearing to inquire into the circumstances. Lashley was present throughout the proceedings. The district court concluded that the use of the statements presented a serious conflict of interest problem and indicated a willingness to disqualify Lashley's counsel if the statements would be used at trial. The

5

district court also explained, however, that difficulties might arise in admitting the evidence even with new counsel given the unethical circumstances in which the statements were obtained. Lashley indicated on the record that he preferred to proceed without the statements and maintain the representation of his current counsel.

The Sixth Amendment guarantees a defendant the right to conflict free counsel. See United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982) (citing Cuyler v. Sullivan, 446 U.S. 335, 355 (1980) (Marshall, J., concurring in part and dissenting in part)), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259 (1984). When informed that a risk of a conflict of interest exists, the district court must hold a pretrial hearing to inquire into the situation. See Holloway v. Arkansas, 435 U.S. 475, 484 (1978). However, a defendant may validly waive the right to the assistance of conflict free counsel so long as the waiver is knowing, voluntary, and intelligent. Agosto, 675 F.2d at 969-70; United States v. Brekke, 152 F.3d 1042, 1045 (8th Cir. 1998); see Holloway, 435 U.S. at 483 n.5. We review the district court's resolution of a potential conflict of interest situation for an abuse of discretion. See Agosto, 675 F.2d at 970.

The potential conflict in the present case was evident prior to trial, and the district court took adequate and proper steps to communicate to Lashley the nature of the potential conflict and to preserve Lashley's right to the assistance of conflict free counsel. Considering the totality of the circumstances here, the record indicates that Lashley expressly, knowingly, voluntarily, and intelligently waived the potential conflict and eliminated the problem by agreeing to proceed to trial without the benefit of the suspect statements that could potentially cause a conflict of interest problem. Accordingly, no actual conflict of interest ever arose during trial.

While the exclusion of exculpatory evidence would normally prove problematic, the allegedly exculpatory statements at issue here were procured in such suspect circumstances that they cannot properly be characterized as exculpatory. The

6

statements were obtained through bribery, and the witnesses were on drugs provided by the defendant's father. Furthermore, the defendant's attorney had contacted the witnesses and obtained their statements outside the presence or knowledge of their own attorneys. Thus, this is not a case where the defendant was denied the use of reliable exculpatory evidence. The district court here fulfilled its obligation to inquire further, see Holloway, 435 U.S. at 484, and completely resolved the problem to the defendant's satisfaction and with his consent prior to trial. The resolution to which Lashley consented not only permitted him to retain his chosen counsel but also prevented the government from informing the jury of Lashley's obstruction of justice activity. We find no abuse of discretion.

Second, Lashley argues that the district court abused its discretion in denying his motion for mistrial when three jurors left early during the first day of deliberations without permission and before receiving the judge's admonition not to speak to anyone about the case. We review the district court's decisions regarding juror misconduct for an abuse of discretion. United States v. Vig, 167 F.3d 443, 450 (8th Cir.), cert. denied, 528 U.S. 859 (1999). We find no abuse of discretion in this case.

This issue arose because three jurors mistakenly believed that they were free to leave at five o'clock on the first day of their deliberations. The district court had properly admonished the jury every other day during the trial and properly admonished the remaining jury members on this occasion before dismissing them for the day. Upon learning that three jurors had left early, the court promptly contacted each one by telephone and gave the admonishment not to speak to anyone about the case. The defendant and all counsel were present with the district court. Each juror indicated on the phone that he or she had not spoken to anyone about the case. The following morning, the district court conducted a hearing to further inquire into the matter. The three assured the court again that they had not spoken to anyone about the case, and they indicated that they understood that they were still under the court's admonition. We conclude that the district court handled the matter appropriately. The district court

7

promptly and adequately remedied the situation by apprising the jurors of their duty not to discuss the case outside the jury room, and no abuse of discretion occurred. See United States v. Weatherd, 699 F.2d 959, 962 (8th Cir. 1983) (finding no reversible error where the jury was allowed to separate overnight after commencing deliberations without being admonished not to discuss the case where the court had given the admonition on at least thirteen prior occasions). But see United States v. Williams, 635 F.2d 744, 745-46 (8th Cir. 1980) (reversing for failure to ever admonish jury during voir dire or at any other time).

Third, Lashley argues that the district court erred by assessing a four-level enhancement for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U. S. Sentencing Guidelines Manual (USSG) § 3B1.1(a) (1998). We review for clear error the district court's factual findings regarding a defendant's role in the offense. United States v. White, 241 F.3d 1015, 1024 (8th Cir. 2001). "In deciding whether a defendant exercised a leadership position, the district court examines factors such as the person's decision making authority, type of participation in the offense, nature and scope of the crime, and degree of control or authority over others." United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995); see USSG § 3B1.1, comment. (n.4). A defendant can be an organizer or leader within the meaning of this guideline by supplying drugs to others without directly controlling other participants in the conspiracy, see Logan, 54 F.3d at 456, but a defendant's "status as a distributor, standing alone, does not warrant the enhancement." United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000), cert. denied, 121 S. Ct. 1163 (2001).

Lashley argues that Donald Moore was the leader, but he also asserts that there was not a great deal of organization within the group. Lashley also argues that he could not have organized the group because he was not involved from its inception. We broadly interpret the terms "organizer" and "leader" for purposes of this enhancement. Logan, 54 F.3d at 456. We have never construed the terms so narrowly as to restrict

application of the enhancement solely to the organizer who first instigated the criminal activity. We have held that a defendant need not be found to be the only organizer or leader, and he need not have been the organizer or leader of all of the participants. Bahena, 223 F.3d at 804.

As noted above, nine of the twelve participants in the criminal activity testified against Lashley at trial. They stated that Lashley directed where the methamphetamine would be cooked, he paid the property owners in methamphetamine in return for the use of their property, he directed and financed the purchase of ingredients necessary for cooking the methamphetamine, he directed participants to steal anhydrous ammonia, and he fronted methamphetamine for resale by others. Even assuming that Moore also functioned as a leader, the district court did not clearly err by applying the four-level enhancement for Lashley's role as a leader or organizer on this record.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9