# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3366

_____

United States of America,                    *
                                             *
                    Plaintiff-Appellee,      *
                                             *     Appeal from the United States
            v.                               *     District Court for the
                                             *     District of Nebraska.
Gary Oh Ward,                                *
                                             *
                    Defendant-Appellant.     *

_____

Submitted: February 14, 2007
Filed: April 26, 2007

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

    After a conditional guilty plea, Gary Oh Ward was convicted of conspiracy to distribute marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846. Ward appeals the district court's[1] denial of his motion to suppress. This court affirms.

_____

    [1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

# I.

Ward was pulled over by a Nebraska state trooper for following too close to another vehicle. Before the cars stopped, the trooper learned that Ward's SUV was a rental (based on the license plate). Approaching the SUV, the trooper saw a "Support Our Troops" magnet on it and that Ward's U-Haul trailer had a newer padlock. Ward was wearing a "DEA" ball cap and using a radar detector in a rental car. The trooper smelled the scent of an air freshener.

Requesting Ward's license and rental agreement, the trooper asked Ward to accompany him to the patrol car, to receive a warning ticket. There, the trooper inquired about his travel plans and purpose, employment, residence, the DEA cap, and the female passenger. Ward replied that he was moving the passenger, his girlfriend, from California to Chicago; they both loaded the trailer (with her stuff); and, he worked for the Department of Homeland Security. The trooper testified there was some confusion over Ward's employment, as Ward initially displayed INS credentials. According to the trooper, Ward was notably nervous.

Before completing the warning ticket, the trooper exited the patrol car to check the vehicle identification number (VIN). The trooper then approached the passenger. She denied being Ward's girlfriend (as he was married) or packing the U-Haul. She said she was just along for a ride to Connecticut. A subsequent search of the trailer revealed 540 pounds of marijuana.

Ward argues that the trooper lacked reasonable, articulable suspicion to check the VIN or question the passenger. He contends his Fourth Amendment rights were violated by an extended stop, and therefore the district court should have suppressed the evidence from the search.

II.

On appeal of a denial of a motion to suppress, this court reviews factual findings for clear error and conclusions of law de novo. *United States v. Durham*, 470 F.3d 727, 733 (8th Cir. 2006). This court affirms unless the decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006), *quoting United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006).

Ward concedes that the initial traffic violation provided probable cause to stop his vehicle and conduct a reasonable investigation. *See United States v. Sanchez*, 417 F.3d 971, 974-75 (8th Cir. 2005). Ward asserts, however, that the trooper unreasonably extended the investigation by approaching the vehicle to check the VIN and question the passenger, because the trooper already had all the information needed for a warning ticket.

Once an officer is legally authorized to stop the driver, the officer may conduct an investigation "reasonably related in scope to the circumstances that justified the interference in the first place." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). This reasonable investigation includes asking for a driver's license and registration, requesting the driver sit in the patrol car, and asking questions about destination and purpose. *Id*.

Contrary to Ward's assertion, a reasonable investigation also includes checking the VIN. A "demand to inspect the VIN, like a demand to see license and registration papers, is within the scope of police authority pursuant to a traffic violation stop." *New York v. Class*, 475 U.S. 106, 115 (1986). *See also id.* at 120 (Powell, J., concurring) ("an officer making a lawful stop of a vehicle has the right and duty to inspect the VIN").

This court has consistently held that as part of a reasonable investigation, an "officer may also question a vehicle's passengers to verify information provided by the driver." *Sanchez*, 417 F.3d at 975. *See United States v. Williams*, 431 F.3d 296, 298 (8th Cir. 2005) (a reasonable investigation includes asking passengers about their destination, route and purpose); *United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006) (officers are entitled to question vehicle occupants to verify the driver's answers); *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002) (same); *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (same); *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003) (same); *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002) (same); *United States v. Rodriguez-Arreola,* 270 F.3d 611, 617 (8th Cir. 2001) (same); *United States v. Foley*, 206 F.3d 802, 805 (8th Cir. 2000) (same); *United States v. Edmisten*, 208 F.3d 693, 694 (8th Cir. 2000) (same); *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995) (same); *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990) (same).

Ward repeatedly asserts that the trooper was "dilatory" in writing the warning ticket. He invokes *United States v. Beck,* 140 F.3d 1129, 1134-35 (8th Cir. 1998), for the proposition that once the purposes of the initial traffic stop are completed, an officer cannot further detain the vehicle or its occupants by asking questions. In *Beck*, however, questioning continued after the purpose of the initial stop was completed when the officer gave a verbal warning and told the driver he was free to leave. *Id.* The district court here made no finding that the trooper was dilatory and the trooper had not finished writing the warning ticket before he checked the VIN and questioned the passenger.

Ward ignores that the scope of a stop can be expanded. "If reasonably related questions raise inconsistent answers . . . a trooper's suspicions may be raised so as to enable him to expand the scope of the stop to ask additional, more intrusive, questions." *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994). The *Ramos* case allowed asking the passenger reasonably related questions, but found that if "no

answers are inconsistent and no objective circumstances supply the trooper with additional suspicion, the trooper should not expand the scope of the stop" by asking unrelated questions. *Id.*

If "the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *Johnson*, 58 F.3d at 357. Here, the circumstances – the patriotic magnet on a rental car, newer lock on the U-Haul trailer, DEA cap, inconsistent INS/Homeland Security credentials, air freshener, and Ward's nervousness – support suspicions unrelated to the traffic offense. *See United States v. Pulliam*, 265 F.3d 736, 740 (8th Cir. 2001).

This broadened inquiry must be reasonable. *Bloomfield*, 40 F.3d at 916. "[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id*.

Here, the trooper verified the VIN and questioned the passenger in less than five minutes. In total, about twenty minutes elapsed while the trooper stopped the vehicle, questioned Ward, checked the VIN, and questioned the passenger. The length of the detention was reasonable and did not involve delay unnecessary to the legitimate investigation of the trooper.

III.

The judgment of the district court is affirmed.

_____