# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1743

_____

United States of America,　　　　　\*

　　　　　　　　　　　　　　　　\*

　　　　　　　Appellee,　　　　　\*

　　　　　　　　　　　　　　　　\*　Appeal from the United States
　　　　v.　　　　　　　　　　　\*　District Court for the
　　　　　　　　　　　　　　　　\*　Southern District of Iowa.

Josue Acosta Marquez, also known as　\*

Martin Contreras-Pulido,　　　　　\*

　　　　　　　　　　　　　　　　\*

　　　　　　　Appellant.　　　　\*

_____

Submitted: January 14, 2010
Filed: May 21, 2010

_____

Before LOKEN, Chief Judge,[1] JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Josue Acosta Marquez (Acosta) was convicted of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 841. The district court[2] sentenced him to 120 months' imprisonment. Acosta appeals his conviction and sentence. We affirm.

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

I.

In March 2007, investigators from the Drug Enforcement Agency and the Mid-Iowa Narcotics Enforcement Task Force were alerted to a drug trafficking operation centered in Des Moines, Iowa. The ring was dealing in marijuana and using three pick-up trucks, one of which was a white 2006 Ford with a ladder rack and construction decals.

In May 2007, law enforcement officers, using magnetic strips, placed a Global Positioning Satellite (GPS) tracking device on the bumper of the Ford while it was parked in a Walmart parking lot in Des Moines. The tracking device allowed police to determine that the truck was traveling back and forth to Denver. Investigators accessed the device to change the battery seven times during the course of the investigation, all while the vehicle was parked in a public place. The device could relay the location of the vehicle only while the vehicle was out-of-doors.

Investigators in Iowa teamed with police in Denver for live surveillance of the truck while it was in Denver and Des Moines. They installed stationary "pole cameras" in two locations in Des Moines—a storage garage on Guthrie Avenue and at a house on Northeast Broadway Avenue. Investigators acquired federal wiretaps on two mobile phones, and worked with a cooperating individual.

During the investigation, investigators observed Acosta operating and riding in some of the trucks used in the drug ring. He was observed at the house on Broadway Avenue that appeared to be the transfer point for drug deliveries from Denver. Using the wiretap, investigators intercepted and recorded hundreds of calls between Acosta and other members of the conspiracy. The GPS device tracked the Ford on trips to Denver, and Acosta was observed following the Ford in another truck.

On October 10, 2007, police executed a search warrant on multiple locations in Iowa and Colorado. Police found large amounts of cash, two handguns, and hundreds of pounds of marijuana. A search of Acosta's residence in Des Moines turned up marijuana, an assault rifle, a handgun, and a measuring scale. On a traffic stop the same day, Acosta was arrested and returned to his residence, where the police read to him a Miranda warning in English. Acosta orally confirmed that he understood his rights and signed a form waiving his right to remain silent. He admitted that he had purchased small amounts of marijuana from another member of the conspiracy and that he had driven trucks to and from Denver. He said that he was paid between five hundred and six hundred dollars for each trip. Acosta, along with five co-conspirators, was indicted under 21 U.S.C. § 841(b)(1)(A) with conspiracy to distribute marijuana.

At a pretrial suppression hearing, Acosta contested the admission of statements that he made at the time of his arrest and the data from the GPS tracking device. Acosta argued that his poor English prevented him from making a knowing and voluntary waiver of his Miranda rights and that the warrantless installation of a GPS tracking device violated the Fourth Amendment. Officers Jeremy Pickett and Dave Tinker testified that Acosta had signed a written Miranda waiver at the time of his arrest and was interviewed in English. Neither officer testified to having any difficulty communicating with Acosta. Nicole May, Acosta's girlfriend, testified that Acosta spoke "[c]onversational English" and that she could communicate with him in English "[m]ost of the time." Officers Rob Johansen, Jason Hatcher, and Lonnie Namanny testified regarding the placement and utilization of the GPS device. In denying the motion to dismiss, the district court found that Acosta's waiver was valid, that he lacked standing to contest the installation of the GPS device, and that even if he had standing, no reasonable expectation of privacy had been violated.

At trial, the government called multiple investigators and cooperating witnesses, who described the basics of the multi-year conspiracy. Marijuana was

acquired in Denver, trucks transported the marijuana to Des Moines for distribution, and the trucks returned to Denver with the proceeds. Co-conspirators explained that secret compartments in the trucks could hold between one hundred fifty and two-hundred pounds of marijuana. One co-conspirator stated that he had trucked some fifteen loads of marijuana on this route, the trucks usually carried a two-hundred pound load, and the trucks were unloaded at the house on Broadway Avenue in Des Moines. Officer Jeremy Pickett recounted the statements that Acosta had made at the time of his arrest to the effect that he had driven trucks from Denver to Des Moines four times for between five and six hundred dollars per trip.

The jury convicted Acosta of conspiracy to distribute marijuana, and it found beyond a reasonable doubt that the quantity of marijuana involved in the conspiracy and reasonably foreseeable to Acosta was equal or in excess of 1,000 kilograms. The presentence investigation report (PSR) recommended a base offense level of 32, as per U.S.S.G. § 2D1.1(c)(4), and a two-level enhancement because a dangerous weapon was involved, as per U.S.S.G. § 2D1.1(b)(1), for a total offense level of 34. The PSR calculated seven criminal history points and a criminal history category of IV, resulting in a guideline imprisonment range of 210 to 262 months.

At sentencing, Acosta objected to the PSR on multiple grounds. He argued that he should only be held accountable for a maximum of 800 pounds (362.87 kilograms) of marijuana, given that the record showed that at most he had driven the truck from Denver four times. Acosta claimed that an offense level reduction was warranted because he had played a minimal or minor role in the conspiracy and that a firearm enhancement was not warranted. He argued that a criminal history of IV overstated the seriousness of his prior offenses and that a downward departure was warranted. Acosta proposed a sentence of 120 months' imprisonment, in line with the statutory mandatory minimum set forth in 21 U.S.C. § 841(b)(1)(A). The district court denied Acosta's objection to the attribution of 1,000 kilograms, granted his request for a two-level minor role reduction, sustained his objection to the firearm enhancement, and

denied his objection to the calculation of his criminal history. The revised offense level was 28, resulting in a guidelines range of 110 to 137 months' imprisonment. After discussing the sentencing factors set forth in 18 U.S.C. § 3553, the district court imposed the 120-month sentence described above.

## II.

### A.

Acosta argues that the district court erred in denying his motion to suppress his statements at the time of his arrest and the evidence garnered from the GPS tracking device. We review *de novo* a denial of a motion to suppress evidence. United States v. Hernandez, 281 F.3d 746, 748 (8th Cir. 2002). We review the district court's factual findings for clear error. Id.

### 1.

Acosta contests the waiver of his Miranda rights. When considering such a claim, we "must evaluate all of the attendant circumstances in determining whether a waiver was voluntarily made. We review the district court's factual findings for clear error and determine *de novo* the legal question of whether the waiver was voluntary." United States v. Henderson, 553 F.3d 1163, 1165 (8th Cir. 2009) (per curiam) (internal citations omitted); see also United States v. Garlewicz, 493 F.3d 933, 935 (8th Cir. 2007). Investigators testified that Acosta orally consented to an interview, signed a written form to the same effect, and had no difficulty communicating in English. When Acosta was questioned in English, he responded in English. As recounted earlier, Nicole May testified that Acosta often speaks conversational English. In light of this evidence, we find no reason to conclude that Acosta lacked the capacity to waive his Miranda rights, or that his waiver was

anything but knowingly, voluntarily, and intelligently given. Accordingly, the district court did not clearly err in finding that Acosta's waiver was valid.

2.

Acosta argues that the placement of a GPS tracking device on the Ford was an unlawful search under the Fourth Amendment. To establish a Fourth Amendment violation, a defendant must show that he had a reasonable expectation of privacy in the area searched. United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). A defendant lacks standing to contest the search of a place to which he has an insufficiently close connection. Id. Acosta neither owned nor drove the Ford and was only an occasional passenger therein. He therefore lacked standing to contest the installation and use of the GPS device. See United States v. Barragan, 379 F.3d 524, 530 (8th Cir. 2004) (holding that a "mere passenger" found sleeping in the back seat of a sport-utility vehicle lacked standing to challenge search of vehicle).

Even if Acosta had standing, we would find no error. A person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another. United States v. Knotts, 460 U.S. 276, 281 (1983). When electronic monitoring does not invade upon a legitimate expectation of privacy, no search has occurred. Id. at 285. When, however, police use electronic monitoring in a private residence, not open to visual surveillance, it violates reasonable expectations of privacy and is impermissible under the Fourth Amendment. United States v. Karo, 468 U.S. 705, 714-16 (1984). Consequently, when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time. United States v. Garcia, 474 F.3d 994, 998 (7th Cir.), cert. denied, 552 U.S. 883 (2007); see also United States v. Bruneau, 594 F.2d 1190, 1197 (8th Cir. 1979) (finding no reasonable expectation of privacy in the location of airborne planes used to traffic marijuana).

We are mindful of the concerns surrounding the use of electronic tracking devices. As Judge Posner observed in Garcia, the cost of the technology is decreasing while the ability of police to monitor and install such devices is increasing. 474 F.3d at 998. It is imaginable that a police unit could undertake "wholesale surveillance" by attaching such devices to thousands of random cars and then analyzing the volumes of data produced for suspicious patterns of activity. Id. Such an effort, if it ever occurred, would raise different concerns than the ones present here. In this case, there was nothing random or arbitrary about the installation and use of the device. The installation was non-invasive and occurred when the vehicle was parked in public. The police reasonably suspected that the vehicle was involved in interstate transport of drugs. The vehicle was not tracked while in private structures or on private lands. The device merely allowed the police to reduce the cost of lawful surveillance. Accordingly, the district court did not err in denying Acosta's motion to suppress the information provided by the GPS tracking device.

B.

Acosta argues that the district court erred in denying his motion in limine that sought to preclude the government from introducing into evidence the assault rifle seized from his residence at the time of his arrest. He argues that the firearm was not relevant to the charges he faced, and, even if it were relevant, it was unfairly prejudicial. We review a district court's evidentiary rulings for abuse of discretion. United States v. Chase, 451 F.3d 474, 479 (8th Cir. 2006); see United States v. Emmanuel, 112 F.3d 977, 979 (8th Cir. 1997) (applying abuse of discretion standard to district court's evidentiary ruling on admission of firearms). Firearms may be probative of an ongoing drug conspiracy, especially when they are found in close proximity to drugs. United States v. Burns, 432 F.3d 856, 864 (8th Cir. 2005). The assault rifle in question was found in proximity to drugs, $40,000 in cash, drug packaging, and a digital scale. The rifle was relevant to the existence of an ongoing drug conspiracy. See id.; Emmanuel, 112 F.3d at 980. Acosta has failed to

demonstrate that admission of the firearm was unfairly prejudicial, and thus the district court did not abuse its discretion by admitting it into evidence.

## C.

Acosta argues that he should not have been held responsible for distributing more than 1,000 kilograms of marijuana. The district court's verdict form instructed the jury to answer the following question: "Do you find beyond a reasonable doubt that the quantity of marijuana involved in the conspiracy and reasonably foreseeable to the defendant was 1,000 kilograms or more of marijuana?" The form went on to instruct the jury that if they answered this question negatively, then they were to answer a second question: "[D]o you find beyond a reasonable doubt that the quantity of marijuana involved in the conspiracy and reasonably foreseeable to the defendant was 100 kilograms or more of marijuana?" After deliberations, the jury answered the first question in the affirmative. On appeal, Acosta argues that insufficient evidence was presented at trial supporting such an attribution, and he renews his argument for judgment of acquittal. He also argues that the district court's verdict form was "fatally defective," and that reversal is warranted on plain error review.

## 1.

We review the denial of a motion for judgment of acquittal *de novo.* United States v. Hodge, 594 F.3d 614, 617 (8th Cir. 2010). We will affirm if the record, viewed in the light most favorable to the verdict, contains substantial evidence in support of the jury's verdict. Id. A defendant is liable for actions of a conspiracy that were reasonably foreseeable to him, unless he affirmatively withdraws from the conspiracy. Id. at 619-20. Substantial evidence at trial indicated that the conspiracy involved numerous shipments of marijuana. Conspirators used vehicles that were able to carry 200 pounds (90.72 kilograms) of marijuana, and they often carried a full load. The conspiracy was able to move 1,000 kilograms of marijuana in twelve trips. The

multi-year conspiracy included at least four trips by Acosta, and approximately fifteen trips by at least one co-conspirator. The record contained substantial evidence that it was reasonably foreseeable to Acosta that the conspiracy would transport at least 1,000 kilograms of marijuana. The district court, therefore, did not err in denying Acosta's motion for judgment of acquittal.

2.

Acosta argues that the district court failed to adequately instruct the jury as to the proper application of a "reasonably foreseeable" standard. This claim was not raised below, and accordingly our review is for plain error. Puckett v. United States, 129 S. Ct. 1423, 1428 (2009); United States v. Martin, 583 F.3d 1068, 1074 (8th Cir. 2009), cert. denied, 78 U.S.L.W. 3580 (Apr. 5, 2010). Under plain error review, we may grant a defendant relief on an unpreserved issue if: (1) there was error that the defendant did not waive; (2) the error was clear or obvious; (3) the error affects the defendant's substantial rights; and, (4) the error undermines the fairness, integrity, or public reputation of the judicial proceeding. Fed. R. Crim. P. 52(b); Puckett, 129 S. Ct. at 1429; Martin, 583 F.3d at 1074.

Acosta argues that the verdict form was plainly erroneous because (1) there was insufficient evidence to warrant allowing the jury to find 1,000 kilograms or more of marijuana was reasonably foreseeable to Acosta, and (2) if the evidence was sufficient to support the submission of the special interrogatory, the interrogatory was "fatally flawed" because it failed to direct the jury to make an individual assessment of Acosta's drug quantity liability. As stated above, there was substantial evidence in the record to attribute more than 1,000 kilograms of marijuana to Acosta. Thus, it was not error to submit the instruction regarding this quantity of marijuana.

On his second point, Acosta relies heavily on the language of U.S.S.G. § 1B1.3, which limits conspiracy liability for the purpose of sentencing by what is reasonably

foreseeable to the defendant and the scope of the individual defendant's criminal undertaking. He also relies on a Fourth Circuit case that found fault in the lack of an individualized jury instruction in a drug conspiracy case. United States v. Daniels, 323 Fed. Appx. 201, 214 (4th Cir.) (unpublished), cert. denied, 130 S. Ct. 644 (2009). Acosta cites no case from our court finding fault with a verdict form similar to the one used here or requiring that an additional instruction be given. The district court, therefore, did not err in not giving such an instruction. In any event, any error was neither clear nor obvious.

## III.

The judgment is affirmed.

_____