# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2977

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Jonathan McCarty, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2010
Filed: July 21, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jonathan McCarty entered a conditional plea of guilty to possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). On appeal, McCarty contends that the district court[1] erred in failing to grant his motion to suppress evidence. We affirm.

_____

[1] The Honorable Karen Schreier, Chief Judge, United States District Court for the District of South Dakota, adopting the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

At approximately 5:30 p.m. on March 7, 2008, Trooper Matt Oxner of the South Dakota Highway Patrol stopped McCarty for speeding as he was driving on Interstate 90 near Rapid City, South Dakota. After asking McCarty for his driver's license and the vehicle's registration, Oxner asked McCarty to sit in the front passenger's seat of the patrol car during the remainder of the stop.

While McCarty sat in the patrol car, Oxner explained the reason for the stop and engaged McCarty in a discussion about his travel itinerary. Oxner said that he was going to issue McCarty a warning and then, while waiting for verification of McCarty's documents, asked McCarty if he had any drugs in the car. This line of questioning made McCarty very nervous, whereupon Oxner encouraged him to be honest about what was in the car. McCarty admitted that there was a small quantity of marijuana—the butt of a marijuana cigarette—in the center console. Oxner handcuffed McCarty and found the cigarette where McCarty said it would be. Oxner then searched the entire vehicle and noticed markings on the underside of the gas tank, suggesting to him that the tank had been removed.

Oxner transported McCarty and his vehicle to a Highway Patrol garage. The gas tank was removed and fourteen vacuum-sealed packages containing 5.489 kilograms of methylenedioxymethamphetamine (a.k.a. "ecstasy") were found inside. At approximately 8:40 p.m., Agent Jeff Goble of the South Dakota Division of Criminal Investigation arrived at the garage to assist the investigation. Goble read McCarty his Miranda rights and proceeded to question him. McCarty admitted to smoking marijuana shortly before he began his trip.

McCarty was indicted on one count of possession of a controlled substance with intent to distribute. He moved to suppress his statements to Oxner during the traffic stop and afterwards, as well as his statements to Goble at the Highway Patrol garage.

He also moved to suppress the physical evidence derived from the traffic stop, contending that there was not probable cause to search the vehicle, that the stop was improperly extended, and that the search was unduly invasive.

At the suppression hearing, Oxner and Goble testified as to the circumstances of McCarty's arrest, as sketched above. Oxner explained why he expanded his investigation beyond the initial traffic stop: McCarty stated that he was driving one-way from Seattle to Atlanta, a known drug route; McCarty had driven non-stop from Seattle and planned to maintain a very fast pace, having rented the car for only three days; McCarty was driving a rental car with out-of-state plates; the cost of the one-way car rental exceeded Oxner's estimate of round-trip airfare; and remnants of fast-food and a small duffel bag were visible in the vehicle. McCarty testified that these factors, in light of his experiences as a highway patrolman who had interdicted numerous drug couriers traveling the same route, gave rise to a suspicion that McCarty was transporting drugs.

Seeking to dispel or verify this suspicion, Oxner asked McCarty about the presence of drugs in the vehicle. In response, McCarty became increasingly nervous, averred that he was a "good guy," laughed, and said that there were no drugs in the vehicle. Oxner stated that a canine unit could be used to detect drugs and then asked about the presence of specific types of drugs in the vehicle. In response to Oxner's questions about marijuana, McCarty broke eye contact and lowered his voice, whereupon Oxner asked McCarty if he was positive about there being no marijuana in the vehicle. McCarty's nervousness escalated rapidly, with his heart rate increasing to the point at which his pulse was visible beneath his shirt. Oxner commented on McCarty's visible pulse and increasing signs of nervousness and encouraged him to be "honest" about whether there were drugs in the vehicle. Oxner said that if McCarty was forthright, Oxner would be as lenient with him as possible. At that point, McCarty admitted to the presence of a "roach," that is, a used marijuana cigarette, in

-3-

the vehicle. Oxner handcuffed McCarty and, as stated above, found the marijuana cigarette at the place specified by McCarty.

Based upon this discovery, Oxner believed that he had probable cause to search the entire vehicle for additional contraband. Upon inspection of the underside of the vehicle, Oxner became suspicious that the gas tank had been "messed with" and contained contraband, testifying that:

> With this vehicle, the gas tank had scratch marks on it. . . . [T]here was mud underneath the undercarriage of the Durango. On the gas tank it was fairly clean. You could see scratch marks all the way across the gas tank. You could see the two gas tank straps that hold the tank up itself were clean; you could see smudge marks on them. On the two sides of the straps are where the bolts secure the straps to the gas tank; they [we]re very, very tooled.

Suppression Hr'g Tr. at 35-36.

The magistrate judge recommended that the statements made to Trooper Oxner and Agent Goble be admitted. The magistrate judge also recommended that the physical evidence seized from the vehicle be admitted, because the pre-arrest detention did not constitute a custodial interrogation, Oxner was justified in expanding the traffic stop, McCarty's admission of having some marijuana in the vehicle established probable cause to search the entire vehicle, and the search of the gas tank was not unduly invasive. The district court adopted the magistrate judge's report and recommendation in full and denied the motion to suppress.

Pursuant to a conditional plea agreement, McCarty pleaded guilty. McCarty's plea agreement included a waiver of his right to appeal, which provided as follows:

> The Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues. The parties agree that excluded from this

waiver is the Defendant's right to appeal: (1) any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a); and (2) the adverse determinations of the following pretrial motions: (a) the District Court's denial of the defendant's motion to suppress dated October 7, 2008.

R. 51-52. During McCarty's plea colloquy, the district court asked him if he understood that he was waiving his right to appeal, except for the two issues reserved by the plea agreement. McCarty responded affirmatively. The district court sentenced McCarty to 121 months' imprisonment, following which McCarty filed this appeal.

## II.

We review *de novo* the district court's conclusions of law regarding a denial of a motion to suppress evidence. United States v. Marquez, 605 F.3d 604, 609 (8th Cir. 2010). We review for clear error the district court's findings of fact. Id.

### A. Expansion of the Traffic Stop

McCarty argues that Oxner lacked an objectively reasonable basis for expanding the traffic stop into a drug trafficking investigation. During a lawful traffic stop, an officer may conduct a reasonable investigation. United States v. Ward, 484 F.3d 1059, 1061 (8th Cir. 2007). A reasonable investigation includes asking the driver for his license and registration, requesting the driver to sit in the patrol car to answer questions, verifying the driver's identification and related documents, and asking questions about the driver's itinerary. Id. at 1061-62; United States v. Jones, 269 F.3d 919, 924-25 (8th Cir. 2001). The scope of a traffic stop can be expanded if the driver's answers and behavior "support suspicions unrelated to the traffic offense." Ward, 484 F.3d at 1062. "To continue to detain a vehicle's occupants after the initial

stop is completed, the officer must have been aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Shafer, __ F.3d __, 2010 WL 2519577, *3 (8th Cir. 2010) (internal punctuation omitted). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." Id. (quoting United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008)).

Oxner's expansion of the traffic stop was justified. As recounted above, Oxner initially asked McCarty basic background questions about his itinerary. Based upon a number of factors and in light of his experience, Oxner became suspicious that McCarty was transporting contraband. Oxner was aware of particularized, objective facts that gave rise to his suspicion that a crime was being committed, including McCarty's compressed travel schedule along a known drug route, his outwardly puzzling decision to rent a car for a one-way trip at substantial expense, and his manifestation of atypical nervousness. Considered in the light of Oxner's experience, the totality of the circumstances suggested that McCarty was committing a crime. Accordingly, Oxner's suspicion was reasonably warranted and he was justified in expanding the traffic stop to ask McCarty about the presence of drugs in the car.

## B. Statements Made to Oxner and Goble

McCarty argues that the district court erred by admitting the statements he made to Oxner before being handcuffed and the statements he made to Goble after receiving a Miranda warning. We disagree. It was permissible for Oxner to ask McCarty basic investigatory questions at the time of the traffic stop and to expand the scope of these questions in light of his reasonable suspicions. "When an officer develops a reasonable, articulable suspicion of criminal activity during a traffic stop, he has justification for a greater intrusion unrelated to the traffic offense." United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995) (internal citations and punctuation

omitted). "Police officers are not required to ignore their reasonable suspicions. Rather, they are permitted to graduate their responses to the demands of any particular situation." Id. (internal punctuation omitted).

Based upon his reasonable, articulable suspicions about drug trafficking, Oxner was entitled to expand the scope of the questioning beyond the original traffic offense. Oxner graduated his response to the evolving circumstances and employed the least intrusive means to verify or dispel his suspicion by asking McCarty to be truthful about the presence of drugs in the car. This line of questioning was reasonable in these circumstances, and the situation did not amount to a custodial interrogation. Thus, it was not error to admit the statements McCarty made to Oxner before he was handcuffed. Likewise, it was not error to admit McCarty's post-Miranda statements to Goble. As the district court determined, McCarty was properly informed of his Miranda rights, and he voluntarily, knowingly, and intelligently waived those rights. All statements made thereafter were properly admitted.

## C. Search of the Vehicle

McCarty argues that the search of the gas tank was improper because it exceeded the scope of probable cause. We disagree. McCarty admitted that there was marijuana in his car. This admission established probable cause to search for the marijuana. The discovery of the marijuana provided probable cause to search the entire vehicle. United States v. Hernandez-Mendoza, 600 F.3d 971, 976 (8th Cir. 2010); United States v. Olivera-Mendez, 484 F.3d 505, 512 (8th Cir. 2007). A search of every part of the vehicle that might contain contraband was authorized, because drug traffickers are known to stow contraband in secret compartments. Hernandez-Mendoza, 600 F.3d at 976.

As recounted above, Oxner articulated a specific and objectively reasonable basis for his suspicion that the gas tank contained contraband. The removal of the gas

tank was completed as expeditiously as possible. Accordingly, removal of the gas tank and inspection thereof was proper. Id. ("Probable cause to search a vehicle does not dissipate simply because it takes a long time to complete a reasonable and thorough search."); see also United States v. Collins, 532 F.2d 79, 85 (8th Cir. 1976) (holding that removal of vehicle from street to station house was proper because "trunk could not be opened at the scene of the arrest").

On appeal, McCarty argues that (1) the duration of the stop gave Oxner sufficient time to obtain a warrant to search the vehicle; (2) technological change has eviscerated the rationale for the vehicle exception to the warrant requirement, because—according to McCarty—Oxner could have easily acquired a telephonic warrant; and (3) the vehicle exception to the warrant requirement articulated in United States v. Ross, 456 U.S. 798 (1982), should be modified in light of new technology. McCarty failed to raise these claims in his motion to suppress, and thus they were waived under the terms of the plea agreement. Even if they were not waived, McCarty would not be entitled to any relief under review for plain error because these claims rely upon presumptions contrary to our precedent. See United States v. Alverez, 235 F.3d 1086, 1089 (8th Cir. 2000) (upholding search under the automobile exception to the warrant requirement); United States v. Brown, 49 F.3d 1346, 1350 (8th Cir. 1995) (same). Thus, any error below was neither clear nor obvious. See Marquez, 605 F.3d at 611 (setting forth the standard for relief on review for plain error).

D. Equal Protection

For the first time on appeal, McCarty argues that the evidence and pre-Miranda statements derived from the traffic stop should be suppressed because expansion of the traffic stop was "the product of selective law enforcement practices which violate constitutional guarantees of equal protection." Appellant's Br. 38. McCarty, who is

African-American, alleges that race was a factor in Oxner's decision to expand the traffic stop.

McCarty's plea agreement, however, included a waiver of his right to appeal any non-jurisdictional issues, aside from a sentencing decision to depart or vary upwards from the guidelines and the adverse determinations of the district court with regard to his motion to suppress. McCarty did not raise an equal protection claim in his motion to suppress. Absent a miscarriage of justice, we will enforce a waiver of a right to appeal. United States v. Andis, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc). McCarty has not presented a racial profiling claim worthy of our consideration. His argument is cursory, speculative, and unsubstantiated. Indeed, the record contains no evidence that McCarty's race was a factor in expanding the traffic stop. Moreover, as discussed above, several factors justified expanding the traffic stop. Accordingly, we will enforce McCarty's waiver. Thus, McCarty is entitled to no relief on this claim.

III.

The judgment is affirmed.

_____