# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 08-3034**                                    **September Term 2010**

1:05-cr-00386-ESH-1

**Filed On:** November 19, 2010

United States of America,

        Appellee

    v.

Antoine Jones,

        Appellant

------------------------------
Consolidated with 08-3030

**BEFORE:**    Sentelle, Chief Judge, and Ginsburg, Henderson, Rogers, Tatel, Garland, Brown, Griffith, and Kavanaugh, Circuit Judges

## O R D E R

Appellee's petition for rehearing en banc in No. 08-3034, and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is

**ORDERED** that the petition be denied.

                                    **FOR THE COURT:**
                                    Mark J. Langer, Clerk

                      BY:    /s/
                                    Michael C. McGrail
                                    Deputy Clerk

* Chief Judge Sentelle and Circuit Judges Brown and Kavanaugh would grant the petition for rehearing en banc.

* A statement by Circuit Judges Ginsburg, Tatel, and Griffith concurring in the denial of rehearing en banc is attached.

* A statement by Chief Judge Sentelle, joined by Circuit Judges Henderson, Brown, and Kavanaugh dissenting from the denial of rehearing en banc is attached.

*A statement by Circuit Judge Kavanaugh dissenting from the denial of rehearing en banc is attached.

**No. 08-3034**                                    **September Term 2010**

GINSBURG, TATEL and GRIFFITH, *Circuit Judges*, concurring in the denial of rehearing en banc: In response to the Government's petition, we underline two matters. First, because the Government did not argue the points, the court did not decide whether, absent a warrant, either reasonable suspicion or probable cause would have been sufficient to render the use of the GPS lawful; to the extent the Government invoked the automobile exception to the warrant requirement, as we pointed out, that exception applies only when "a car is readily mobile and probable cause exists to believe it contains contraband," neither of which elements the Government satisfied. Slip op. at 38 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). Second, the Government's petition complains that the court's opinion "implicitly calls into question common and important practices such as sustained visual surveillance and photographic surveillance of public places," Pet. at 2, but that is not correct. The court explicitly noted: "This case does not require us to, and therefore we do not, decide whether a hypothetical instance of prolonged visual surveillance would be a search subject to the warrant requirement of the Fourth Amendment." Slip op. at 37.

SENTELLE, *Chief Judge*, joined by HENDERSON, BROWN, AND KAVANAUGH, *Circuit Judges*, dissenting from the denial of rehearing en banc:  The panel opinion in this case held that the government's warrantless use of a global positioning system ("GPS") device to track the public movements of appellant Antoine Jones's vehicle for approximately four weeks was an unreasonable search in violation of Jones's Fourth Amendment rights.  In my view, this question should be reviewed by the court en banc because the panel's decision is inconsistent not only with every other federal circuit which has considered the case, but more importantly, with controlling Supreme Court precedent set forth in *United States v. Knotts*, 460 U.S. 276 (1983).

In *Knotts*, the Supreme Court reviewed a case in which law enforcement officers had placed a radio transmitter ("beeper") inside a chloroform container which was in turn placed inside a motor vehicle.  Through the use of the electronic signals from the beeper, the police tracked the chloroform container from one automobile to another across the length of an interstate journey from Minneapolis, Minnesota, to Shell Lake, Wisconsin.  The information obtained from the electronic monitoring was augmented by intermittent physical surveillance and by monitoring from a helicopter.  In upholding the constitutionality of the surveillance by electronic monitoring, the Supreme Court reviewed the establishment of the privacy interest as the principal right protected by the Fourth Amendment's guarantee.  To briefly summarize the Court's jurisprudence from *Knotts* and its predecessors:  if there is no invasion of a reasonable expectation of privacy, there is no violation of the Fourth Amendment protection "against unreasonable searches and seizures."  U.S. CONST. AMENDMENT IV.

Applying that jurisprudence to the electronically enhanced surveillance in *Knotts*, the Court declared that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." 460 U.S. at 281.  The Court went on to note that "[w]hen [the suspect] traveled over the public streets, he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *Id.* at 281-82.  The Court further reasoned that since visual surveillance from public places along the route or adjacent to the destination would have revealed all of the same information to the police, "[t]he fact that the officers . . . relied not only on visual surveillance, but also on the use of the beeper to signal the presence of [the suspect's] automobile to the police receiver, does not alter the situation." *Id.* at 282.  Central to the *Knotts* Court's reasoning, and, I think, controlling in this case is the observation that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." *Id.*

Everything the Supreme Court stated in *Knotts* is equally applicable to the facts

of the present controversy.  There is no material difference between tracking the movements of the *Knotts* defendant with a beeper and tracking the *Jones* appellant with a GPS.  The panel opinion distinguishes *Knotts*—I think unconvincingly—not on the basis that what the police did in that case is any different than this, but that the volume of information obtained is greater in the present case than in *Knotts*.  The panel asserts that "the totality of Jones's movements over the course of a month . . . was not exposed to the public."  The panel reasoned that "first, unlike one's movements during a single journey, the whole of one's movements over the course of a month is not *actually* exposed to the public because the likelihood anyone will observe all these movements is effectively nil."  Slip op. at 22.  I suggest that this assertion in no way demonstrates that Jones's movements were not exposed to the public.  The fact that no particular individual sees them all does not make the movements any less public.  Nor is it evident at what point the likelihood of a successful continued surveillance becomes so slight that the panel would deem the otherwise public exposure of driving on a public thoroughfare to become private.  As the *Knotts* Court recalled, it is well established that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."  *Katz v. United States*, 389 U.S. 347, 351 (1967).  In applying that principle in *Knotts*, the Supreme Court declared that "a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."  460 U.S. at 281.

The panel opinion seems to recognize that Jones had no reasonable expectation of privacy in any particular datum revealed by the GPS-augmented surveillance, but somehow acquired one through "the totality of Jones's movements over the course of a month." Slip op. at 22.  In the view of the panel, this is true "because that whole reveals more . . . than does the sum of its parts."  While this may be true, it is not evident how it affects the reasonable expectation of privacy by Jones.  The reasonable expectation of privacy as to a person's movements on the highway is, as concluded in *Knotts*, zero.  The sum of an infinite number of zero-value parts is also zero.  Nowhere in *Knotts* or any other Supreme Court Fourth Amendment decision since the adoption of the expectation of privacy rationale in *Katz* has the Court ever suggested that the test of the reasonable expectation is in any way related to the intent of the user of the data obtained by the surveillance or other alleged search.  The words "reasonable expectation of privacy" themselves suggest no such element.  The expectation of privacy is on the part of the observed, not the observer.  Granted, the degree of invasion of that expectation may be measured by the invader's intent, but an invasion does not occur unless there is such a reasonable expectation.

Lest the importance of this opinion be underestimated, I would note that the invasion the panel found was not in the use of the GPS device, but in the aggregation of the information obtained.  Presumably, had the GPS device been used for an hour or perhaps a day, or whatever period the panel believed was consistent with a normal

surveillance, the evidence obtained could have been admitted without Fourth Amendment problem.  Therefore, it would appear, as appellee argues, that this novel aggregation approach to the reasonable expectation of privacy would prohibit not only GPS-augmented surveillance, but any other police surveillance of sufficient length to support consolidation of data into the sort of pattern or mosaic contemplated by the panel.  True, the panel declares that "this case does not require us to, and therefore we do not, decide whether a hypothetical instance of prolonged visual surveillance would be a search subject to the warrant requirement of the Fourth Amendment."  Even in the face of this declaration, I cannot discern any distinction between the supposed invasion by aggregation of data between the GPS-augmented surveillance and a purely visual surveillance of substantial length.

I would further note that the Seventh Circuit in *United States v. Garcia*, 474 F.3d 994 (7th Cir.), *cert. denied*, 128 S. Ct. 291 (2007), concluded that "GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking." *Id.* at 997; *see also United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010); *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010).

In light of its inconsistency with Supreme Court jurisprudence and with the application of the Fourth Amendment to similar circumstances by other circuits, this decision warrants en banc consideration.  I respectfully dissent from the denial.

KAVANAUGH, *Circuit Judge*, dissenting from the denial of rehearing en banc: I agree with Chief Judge Sentelle that the panel opinion conflicts with the Supreme Court's decision in *United States v. Knotts*, 460 U.S. 276 (1983). I also share Chief Judge Sentelle's concern about the panel opinion's novel aggregation approach to Fourth Amendment analysis.

That is not to say, however, that I think the Government necessarily would prevail in this case. The defendant contended that the Fourth Amendment was violated not only by the police surveillance without a warrant (the issue addressed in the panel opinion) but also by the police's initial installation of the GPS device on his car without a warrant. The panel opinion did not address the defendant's alternative and narrower property-based Fourth Amendment argument concerning the installation. In my judgment, the defendant's alternative submission also poses an important question and deserves careful consideration by the en banc Court.

The Supreme Court has stated that the Fourth Amendment "protects property as well as privacy." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 62 (1992). As the defendant here rightly points out, the police not only engaged in surveillance by GPS but also intruded (albeit briefly and slightly) on the defendant's personal property, namely his car, to install the GPS device on the vehicle.

Because of the police's physical intrusion to install the GPS device, this case raises an issue that was not presented in *Knotts*. The defendant in *Knotts* did not own the property in which the beeper was installed and thus did not have standing to raise any Fourth Amendment challenge to the installation of the beeper. But Justice Brennan's concurring opinion in *Knotts* foresaw the Fourth Amendment issue posed by the police's installing such a device: "when the Government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment even if the same information could have been obtained by other means." 460 U.S. at 286.

As Justice Brennan noted in *Knotts*, the Supreme Court precedent that is perhaps most relevant to this property-based argument is the Court's unanimous 1961 decision in *Silverman v. United States*, 365 U.S. 505. In *Silverman*, the Court concluded that installation of a listening device on the defendants' property (by accessing a heating duct in a shared wall of the defendants' row house) was subject to the Fourth Amendment. The Court reasoned that the Fourth Amendment applied because of the police's physical contact with the defendants' property, which the Court variously characterized as: "unauthorized physical penetration into the premises," "unauthorized physical encroachment within a constitutionally protected area," "usurping part of the petitioners' house or office," "actual intrusion into a constitutionally

protected area," and "physically entrench[ing] into a man's office or home." *Id.* at 509-12. The Court further determined that a physical encroachment on such an area triggered Fourth Amendment protection regardless of the precise details of state or local trespass law. *Id.* at 511.

To be sure, since *Silverman* the Supreme Court has held that the Fourth Amendment protects more than just property interests. *See Katz v. United States*, 389 U.S. 347, 352-53 (1967). But as thoroughly explained in *Soldal*, the Court has not retreated from the principle that the Fourth Amendment also protects property interests. 506 U.S. at 64. "'[P]rotection for property under the Fourth Amendment' remains a major theme of the post-*Katz* era: If a person owns property or has a close relationship to the owner, access to that property usually violates his reasonable expectation of privacy." Orin S. Kerr, *Four Models of Fourth Amendment Protection*, 60 STAN. L. REV. 503, 516 (2007) (quoting *Soldal*, 506 U.S. at 64); *see also Bond v. United States*, 529 U.S. 334 (2000) (squeezing outer surface of a bag subject to Fourth Amendment).

If *Silverman* is still good law, and I see no indication that it is not, then *Silverman* may be relevant to the defendant's alternative argument concerning the police's installation of the GPS device. Cars are "effects" under the text of the Fourth Amendment, *see United States v. Chadwick*, 433 U.S. 1, 12 (1977), and are thus "constitutionally protected areas" for purposes of *Silverman*.

The key *Silverman*-based question, therefore, is whether the police's installation of a GPS device on one's car is an "unauthorized physical encroachment within a constitutionally protected area" in the same way as installation of a listening device on a heating duct in a shared wall of a row house. *Silverman*, 365 U.S. at 510. One circuit judge has concluded that the Fourth Amendment does apply to installation of a GPS device: Absent the police's compliance with Fourth Amendment requirements, "people are entitled to keep police officers' hands and tools off their vehicles." *United States v. McIver*, 186 F.3d 1119, 1135 (9th Cir. 1999) (Kleinfeld, J., concurring). Without full briefing and argument, I do not yet know whether I agree with that conclusion. Whether the police's mere touching or manipulating of the outside of one's car is a "physical encroachment within a constitutionally protected area" requires fuller deliberation.[*] In any event, it is an important and close question, one that the en banc Court should consider along with the separate issue raised by Chief Judge Sentelle.

_____

[*] To be clear, even if the Fourth Amendment applies to the installation, the police may still attach GPS devices to suspects' cars. The police simply must first obtain a warrant or otherwise demonstrate that their actions are reasonable under the Fourth Amendment. Indeed, in this case, the police obtained a warrant but then failed to comply with the warrant's temporal and geographic limits.