# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1178

_____

United States of America

*Plaintiff - Appellee*

v.

Arcelia Robles

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 19, 2022
Filed: December 22, 2022
[Unpublished]

_____

Before GRUENDER, MELLOY, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

After the denial of her suppression motion, Robles entered a conditional guilty plea to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The

district court[1] sentenced Robles to a 69-month term of imprisonment. Robles asserts on appeal the district court erred because: (1) Arkansas State Trooper Paul Meeks did not have reasonable suspicion to extend the traffic stop that led to the discovery of methamphetamine, and (2) neither Robles nor her passenger Gloria Cardona freely and voluntarily consented to the search. We affirm.

On June 20, 2019, Trooper Meeks stopped a maroon Nissan pickup truck that had crossed over the fog line. As he approached the vehicle, he observed a box in the back seat covered by a blanket. Trooper Meeks requested Robles' license and had her exit the vehicle. Robles was placed in Trooper Meeks' patrol vehicle where she informed him that she and Cardona were in Arkansas for a week-long visit to see Cardona's ill sister. This information was inconsistent with the rental agreement, which indicated the pickup was to be returned in two days. Robles attempted to explain, stating she planned on leaving Cardona in Arkansas. When Trooper Meeks inquired about the box in the backseat, Robles stated it was a suitcase. Trooper Meeks asked if he could search the suitcase and Robles consented. Before Trooper Meeks spoke with Cardona, Robles stopped him and told him that they had acquired the suitcase from an unspecified person and were transporting it to someone else.

Cardona told Trooper Meeks that she and Robles were in Arkansas to visit a friend for a day or two. Cardona initially refused Trooper Meeks' request to search the vehicle.[2] He followed up by asking, "It's not okay?" Cardona's answer was unclear, basically informing Trooper Meeks that she had nothing illegal and that the only drug in the pickup was her medication. Trooper Meeks informed Cardona that her answer was not entirely responsive, and again inquired "is it okay for me to

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

[2]Trooper Meeks' report and initial testimony reflect that Cardona refused to answer. He later testified that he was unsure whether she had answered negatively, which is the reason he asked for clarification. The district judge found that Cardona initially said "no," which the video of the traffic stop reflects.

search this truck?" Cardona then responded "yes." In the ensuing search, Trooper Meeks discovered methamphetamine, which Robles unsuccessfully moved to suppress.

When reviewing the denial of a suppression motion, "[w]e review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." United States v. Richardson, 40 F.4th 858, 864 (8th Cir. 2022) (citation omitted). "We will reverse a finding of fact for clear error only if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." Id. (citation omitted). Overall, reversal of a denial of a suppression decision is appropriate only if "the decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" United States v. Ward, 484 F.3d 1059, 1061 (8th Cir. 2007) (citation omitted).

During a traffic stop based upon probable cause, a law enforcement officer is "entitled to conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) (citation omitted). Such "investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).

Here, Trooper Meeks did not violate the Fourth Amendment when, during the course of the traffic stop, he asked for Robles' license, inquired about her destination and purpose, and directed her to sit inside the patrol car. See United States v. Espinoza, 885 F.3d 516, 523 (8th Cir. 2018) (citation omitted). Furthermore, "[a]sking an off-topic question, such as whether a driver is carrying illegal drugs, during an otherwise lawful traffic stop does not violate the Fourth Amendment."

United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008) (citation omitted). The record reflects that the traffic stop proceeded expeditiously, and there is no indication that Trooper Meeks caused any unreasonable delay.

Even if the stop had been extended, as Robles argues, Trooper Meeks had a permissible basis to extend the stop at the time of its extension. See United States v. Magallon, 984 F.3d 1263, 1278 (8th Cir. 2021) (citations omitted) ("An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered."). Circumstances that may give rise to reasonable suspicion to extend a traffic stop include: "(1) unusual driving behavior, (2) attempts to evade officers, (3) indirect or incomplete answers to officer questions, (4) nervousness and lack of eye contact, and (5) seeming implausibilities and inconsistencies in the responses to [an officer's] routine questions about travel plans." United States v. Callison, 2 F.4th 1128, 1132 (8th Cir. 2021) (cleaned up). Robles' and Cardona's responses to Trooper Meeks' questions raised reasonable suspicion. Robles' statement that Cardona was traveling to visit her ill sister for a week was contradicted by Cardona's version that they were in Arkansas to visit a friend for a day or two. Robles' report of how they had acquired the suitcase from an unspecified person and that they were to take it to another person also gave rise to reasonable suspicion. Trooper Meeks also observed that both Robles and Cardona appeared nervous. Given these specific and articulable facts, Trooper Meeks had reasonable suspicion that further investigation was warranted

Robles next contends that neither she nor Cardona freely and voluntarily consented to the search. The government bears the burden of proving consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968) (footnote omitted). "Voluntariness is a question of fact to be determined from all the circumstances," Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), which we review for clear error. United States v. LeBeau, 867 F.3d 960, 970 (8th Cir. 2017) (citation omitted). In assessing whether consent was voluntary, we consider the following non-exclusive factors: "(1) the individual's age and mental ability; (2)

-4-

whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals." United States v. Gastelum, 11 F.4th 898, 904 (8th Cir. 2021) (quoting United States v. Carr, 895 F.3d 1083, 1089 (8th Cir. 2018)).

Robles and Cardona each gave Trooper Meeks permission to search. Robles' reliance on Cardona's initial refusal to grant permission is unavailing. The district court found Cardona's initial statement was unclear, and Trooper Meeks' further questioning was permissible to get "clarification." This factual finding is supported by the record and not clearly erroneous. There is no evidence that either woman was impaired, that Robles' or Cardona's age or mental ability impacted either's ability to consent, or that either was subjected to unusual pressure amounting to coercion. The amount of time between the stop and the time the search was undertaken was only ten minutes. After giving consent, neither Robles nor Cardona objected to the search or expressed a belief that they had not consented. The district court's finding that Robles' and Cardona's consent was freely and voluntarily given is not clearly erroneous.

For the foregoing reasons, we affirm the judgment of the district court.

_____